## LOUIS NARVA & others, executors, vs. COMMISSIONER OF CORPORATIONS AND TAXATION.

Bristol.   January 8, 1971. — February 4, 1971.

Present: TAURO, C.J., SPIEGEL, REARDON, & QUIRICO, JJ.

*Taxation,* Succession tax.   *Constitutional Law,* Taxation, Equal protection of laws.

Under a complex agreement with an employee entered into by a business corporation when it consolidated with two other corporations and providing for the employment of the employee in an executive capacity and later as a consultant and for retirement payments and, upon his death, for the payment to his widow of a certain sum forthwith and a certain amount monthly thereafter, payments received by the employee's widow had an "aspect of deferred compensation" and were not to be treated like life insurance payments, and arose from a property interest of the employee the transfer of which was "made or intended to take effect in possession or enjoyment after . . . [the employee's] death", and were subject to the tax imposed by G. L. c. 65, § 1.   [650–651]

The application of G. L. c. 65 § 1, to tax the payments to the widow of an employee under an employment agreement between him and his employer materially different from a life insurance contract providing for similar payments to the insured's widow, which were not subject to taxation under § 1, did not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution.   [651]

PETITION IN EQUITY filed in the Probate Court for the county of Bristol on November 26, 1969.

The case was reported by *Mullaney,* J.

*Mark A. Michelson* for the petitioners.

*Daniel J. Johnedis,* Assistant Attorney General, for the respondent.

SPIEGEL, J.   This is a petition in equity brought in the Probate Court by the executors of the will of Jacob Narva to determine whether the succession tax is due under G. L. c. 65, § 1,[1] on death benefits payable to Narva's widow under

----

[1] General Laws c. 65, § 1, provides in part that "[a]ll property within the jurisdiction of the commonwealth, corporeal or incorporeal, and any interest therein, . . . which shall pass by . . . deed, grant or gift, . . . made or intended to take effect in possession or enjoyment after . . . death [of the grantor or donor] . . . shall be subject to a tax."

the terms of an employment agreement. The trial judge reported the case without decision upon the petition, the answer, and a statement of agreed facts.

On April 2, 1962, Jacob Narva, Inc. and Narva Stores, Inc. were consolidated with Morton's Shoe Stores, Inc. (the corporation). On that same date the corporation entered into an agreement with Jacob Narva (the employee) providing for his employment in an executive capacity for a period ending December 31, 1968, at an annual salary of $49,400. It also provided that, effective January 1, 1969, the corporation would employ him as a consultant at an annual salary of $31,200, "so long as the employee is capable . . . of performing such . . . services." If the employee should retire, either voluntarily or because of disability, he was to receive as "annual compensation" $18,200, payable weekly, during his lifetime.

Paragraph 7 of the agreement provided in part that "[o]n the death of the Employee the Corporation shall pay to his widow . . . $20,000 . . . forthwith, and, in addition, shall, so long as the widow be living, pay to the widow a maximum of 120 equal monthly installments of $656.67, commencing one month from the date of death of the Employee." [2] It was stipulated that "[s]imilar agreements with all other officers who were also directors of the . . . [corporation] were then in effect."

The petitioners in support of their theory that the death benefit under paragraph 7 is not subject to tax under the statute advance the argument that the "death benefit constituted a contract of life insurance." They rely on the holding in the case of *Tyler* v. *Treasurer & Recr. Gen.* 226 Mass. 306, "reaffirmed and applied" in various subsequent cases. *National Shawmut Bank* v. *Commissioner of Corps. & Taxn.* (also known as the *Bird* case) 354 Mass. 350, 354. The *Tyler* case held that payments to the beneficiary under a

---

[2] Paragraph 7 also contained provisions for payment to certain heirs of the employee (daughter and grandchildren) in the event that the employee's wife should predecease him or should die prior to the completion of payments to her.

policy of life insurance were not subject to the succession tax. We are of opinion, however, that the death benefit to the employee's widow is for several reasons "too remote from the concept of life insurance in the *Tyler* case to be treated as life insurance under c. 65, § 1, as it now stands." See the *Bird* case, *supra,* at 361.

First, as the *Tyler* decision pointed out, the "original and fundamental conception [of a contract of life insurance] is a *provision by small, periodical contributions* to secure a benefit for the family" (emphasis supplied). 226 Mass. 306, 308–309. The employment agreement in the instant case contained no provision for periodic payments by the employee to the corporation; he was not obliged even to continue to work for the corporation. The death benefit to the employee's widow, viewed in this light, appears to represent an "aspect of deferred compensation." See the *Bird* case, 354 Mass. 350, 360.

Second, the employment agreement in the present case does not possess the risk characteristics customarily associated with contracts of life insurance. See *Gregg* v. *Commissioner of Corps. & Taxn.* 315 Mass. 704, 707–711; *Cochrane* v. *Commissioner of Corps. & Taxn.* 350 Mass. 237, 239–240; the *Bird* case, 354 Mass. 350, 355–359, 361; *Helvering* v. *Le Gierse,* 312 U. S. 531, 539. The corporation here assumed no actuarial risk. The employee himself assumed only the remote risk that his wife, daughter and grandchildren would all predecease him.

Third, the complexity of this employment arrangement, viewed in the aggregate, serves to distinguish it from a contract of life insurance, as conceived of at the time of the *Tyler* decision. See the *Bird* case, supra, at 359–361.

The petitioners also contend that the death benefit "did not constitute an interest in property belonging to and passing from the employee." In the *Bird* case, it was concluded that "the benefits passing to . . . [the decedent's] widow (if not life insurance within the *Tyler* case and subsequent decisions) were not a mere possibility but *sufficiently arose from a property interest* of . . . [the decedent] to be,

under c. 65, § 1 . . . , a transfer taking effect in possession or enjoyment after . . . [his] death" (emphasis supplied), *supra*, at 360, and cases there cited in fn. 13. It is true that the employee in the present case, unlike Bird, could not realize "at once" an "interest in the plan" by voluntary retirement. Nevertheless, we believe that the terms and conditions of the agreement were sufficient to give the employee a property interest in the death benefits for purposes of G. L. c. 65, § 1. The promise to make these payments was part of the value surrendered by the corporation to the employee in consideration of his promise to use his best efforts so long as employed by the corporation, his covenant not to compete, and perhaps also his participation in the merger of the two stores, which had taken place that same day.

The petitioners seem to contend, further, that the transfer from the employee to the beneficiaries under paragraph 7 was a present gift, rather than one "made or intended to take effect . . . after his death." See the *Tyler* case, 226 Mass. 306, 308–309. As we restated in *Steward* v. *Commissioner of Corps. & Taxn.* 348 Mass. 15, 18, however, it is "[t]he *full fruition* of a transfer or gift . . . that makes the transaction subject to the tax." See also *Welch* v. *Commissioner of Corps. & Taxn.* 309 Mass. 293, 298–299; *Gregg* v. *Commissioner of Corps. & Taxn.* 315 Mass. 704, 706. We therefore regard the transfer involved here as one "made or intended to take effect in possession or enjoyment after . . . death," within the meaning of G. L. c. 65, § 1.

The final argument made by the petitioners is that to apply the tax to the payments received by the employee's widow "would violate the equal protection provisions of the Fourteenth Amendment to the United States Constitution." The suggestion is that the arrangement under paragraph 7 is so similar to a life insurance contract that the two situations "cannot be differently treated." We do not agree. We are not persuaded that the Employee was a member of the same "class" for purposes of taxation as the insured under a life insurance contract. In our earlier discussion we

have pointed out certain material distinctions between the agreement and life insurance. Paragraph 7 must be considered not as a separate and distinct entity but in the context of the entire agreement.

A decree is to be entered declaring that the death benefits payable under paragraph 7 of the employment agreement are subject to the succession tax under G. L. c. 65, § 1.

*So ordered.*