[No. 62260-4.   En Banc.   March 7, 1996.]

PATRICIA ARNOLD, *Respondent* v. DEPARTMENT OF RETIREMENT SYSTEMS, *Petitioner.*

---

*Christine O. Gregoire, Attorney General*, and *Zera H. Lowe, Assistant*, for petitioner.

*Dianna T. Dryden*, for respondent.

*Deborah Maranville* on behalf of Northwest Women's Law Center, amicus curiae.

TALMADGE, J. — Patricia Arnold challenges the constitutionality of RCW 41.26.030(6) and RCW 41.26.160, those portions of the Washington Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF) that preclude her, as the divorced spouse of a LEOFF member, from receiving a LEOFF death benefit when her ex-husband dies. We hold that the statutes in question do not deny Ms. Arnold procedural due process because she had the opportunity to seek consideration of the death benefit in her dissolution proceeding. We reverse the decision of the Court of Appeals and remand the case to the trial court for the reinstatement of its dismissal of Ms. Arnold's complaint with prejudice.

## ISSUE

Are RCW 41.26.160(1) and (2) and RCW 41.26.030(6) unconstitutional because they violate Ms. Arnold's right to procedural due process?

## FACTS

Patricia Arnold married Vincent Arnold in 1964. Mr. Arnold was a firefighter and a participant in LEOFF.[1] Patricia and Vincent legally separated in 1985. In 1987, af-

---

[1]Mr. Arnold is a participant in LEOFF Plan I. We will refer to LEOFF Plan I throughout this opinion as LEOFF.

ter a job-related injury, Mr. Arnold began receiving disability retirement benefits under LEOFF. Patricia and Vincent subsequently divorced in February 1991, when Mr. Arnold was over 50 years of age, the normal LEOFF retirement age. In the dissolution decree, the trial court treated Mr. Arnold's disability retirement allowance as partly community property and partly Mr. Arnold's separate property. The court awarded Ms. Arnold 30 percent of Mr. Arnold's disability retirement allowance during his lifetime, stating:

> Husband's duty disability retirement allowance is properly characterized as part community, due to its nature as, in part, replacement for general retirement benefits; and part separate, due to its nature as compensation for husband's injuries.
>
> Husband had 299 months of service credited within the retirement system; of these, 237 were accumulated during the marriage. Months accumulated during the marriage constitute a community interest; other months are the separate interest of the husband.
>
> A fair and equitable distribution of husband's duty disability retirement benefit is for husband to take 70 percent, and wife 30 percent of the monthly LEOFF-I benefit. . . .

Clerk's Papers at 84. Ordinarily, in a situation where a person becomes disabled after dissolution or, as in this case, legal separation, the ex-spouse is not entitled to any part of the disability payments because such payments are considered to be replacement for lost future income. *In re Huteson*, 27 Wn. App. 539, 543, 619 P.2d 991 (1980) (treatment of such disability payments as anything other than compensation for lost future earnings would "unfairly and permanently burden those future earnings").[2] Because Mr. Arnold was past retirement age at the time

---

[2]The dissolution court here characterized all assets acquired after June 1, 1984, as separate property. Mr. Arnold began receiving duty disability retirement payments on July 2, 1987. Clerk's Papers at 28-29. Thus, those payments would have been Mr. Arnold's separate property had they not contained a retirement component.

of the dissolution, the dissolution court characterized a portion of his LEOFF disability payments as retirement income, thus entitling Ms. Arnold to a share.[3] Clerk's Papers at 30. *See In re Kollmer*, 73 Wn. App. 373, 870 P.2d 978, *review denied*, 124 Wn.2d 1022 (1994).

During the dissolution proceeding, Ms. Arnold sought a ruling from the trial court declaring that she was entitled to a portion of Mr. Arnold's LEOFF death benefit, or, in the alternative, that RCW 41.26.030(6) was unlawful. RCW 41.26.160 entitles the surviving spouse and minor dependents of a LEOFF member to receive a monetary allowance if the member dies on or off the job before retirement, or dies after becoming eligible for a service or disability retirement. RCW 41.26.030(6) defines "surviving spouse" as the "surviving widow or widower of a member," and specifically indicates the term "shall not include the divorced spouse of a member except as provided in RCW 41.26.162."[4] As a result of the dissolution, Ms. Arnold could no longer meet this statutory definition of surviving spouse in the event Mr. Arnold predeceased her. Because she could no longer be Mr. Arnold's surviving spouse, she was not eligible for the LEOFF death benefit set forth at RCW 41.26.160. The trial court concluded "the Washington State statutory scheme regarding survivorship benefits of divorced spouses is not properly before this court."[5] Clerk's

---

[3]The 237 months of service accumulated during marriage represent a little over 79 percent of the total of 299 months of service. Thus, if Mr. Arnold's allowance had only a retirement component, Ms. Arnold's community property share of that amount would have been nearly 40 percent rather than the 30 percent the dissolution court awarded her. It appears the dissolution court characterized Mr. Arnold's allowance as 75 percent retirement and 25 percent disability. Ms. Arnold received her community property share, 40 percent of the retirement component, resulting in 30 percent of the total allowance.

[4]The 1991 Legislature enacted RCW 41.26.162, which allows divorced spouses meeting certain conditions to receive survivorship benefits. Laws of 1991, 1st Sp. Sess., ch. 12, § 2. Ms. Arnold did not meet those conditions.

[5]The court did not give reasons why it so concluded. The parties have not designated for the record on review any of the pleadings in the dissolution action other than the Findings of Fact and Conclusions of Law. Thus, we do not know what arguments Ms. Arnold made to the trial court in the dissolution action concerning her constitutional objections to the statute. Pet. for Review at 2.

Papers at 31. Ms. Arnold did not appeal this decision of the trial court.

Shortly after the entry of the dissolution decree on March 8, 1991, Ms. Arnold sent a Petition for Declaratory Ruling to the Department of Retirement Systems (DRS). She asked DRS to "amend" RCW 41.26.030(6) so that she would be included in the definition of surviving spouse. DRS responded it had no authority to change the statute or to interpret it the way Ms. Arnold suggested.

Ms. Arnold then commenced the present action by filing a complaint for declaratory judgment in Thurston County Superior Court, naming DRS as defendant. In the complaint, she sought as her ultimate relief a "judgment declaring that RCW 41.26.030(6) is unconstitutional."[6] She alleged the statute violated WASH. CONST. art. XXXI, § 1 (amend. 61), the equal rights amendment; WASH. CONST. art. I, § 3, the due process clause; WASH. CONST. art. I, § 12, the privileges and immunities clause; and the due process clauses of the federal constitution contained in the Fifth and Fourteenth Amendments.

DRS moved for dismissal of Ms. Arnold's complaint on standing and ripeness grounds. DRS argued that Ms. Arnold had no standing because the statute she challenged would affect her only if Mr. Arnold predeceased her. As Mr. Arnold was still alive at the time, DRS contended Ms. Arnold was not yet adversely affected by the statute. DRS also argued the case was not ripe for decision because Ms. Arnold's claim to the death benefit could not ripen until

---

[6]In her complaint at Section IV, Ms. Arnold alleged that RCW 41.26.030(6) is unconstitutional, and set forth her "proposed change" to the statute as follows:

"Surviving spouse["] means the surviving widow or widower of a member. The word shall include the divorced spouse of a member if

   (1)   he or she

      (a)  is not otherwise ineligible under RCW 41.26.160(2) and

      (b)  has a Community Property interest in the benefits, and

   (2)   there is not otherwise qualifying under RCW 41.26.160(2) another surviving spouse.

Clerk's Papers at 24, 26.

and if Mr. Arnold predeceased her. The trial court denied the DRS motion.[7]

Ms. Arnold then moved for summary judgment on her constitutional theories. DRS cross-moved for a summary judgment of dismissal. The trial court denied Ms. Arnold's motion and granted DRS's motion dismissing the case. The court later denied Ms. Arnold's motion for reconsideration. Ms. Arnold sought "discretionary review" in the Supreme Court, but we transferred the case to the Court of Appeals.

In *Arnold v. Department of Retirement Sys.*, 74 Wn. App. 654, 658, 875 P.2d 665 (1994), Division Two rejected all of Ms. Arnold's constitutional arguments except her procedural due process theory. The Court of Appeals assumed that Ms. Arnold had an interest in the community contributions to her ex-husband's death benefit under LEOFF, *id.* at 665-66, but determined she did not have a property interest "in benefits attributable to DRS's contribution to the LEOFF fund." *Id.* at 668. The court then found her interest was entitled to constitutional protection: "Here, the death benefit statute deprives Arnold of a portion of her community contribution to the LEOFF fund without prior notice or opportunity to challenge the deprivation." *Id.* at 666-67. The Court of Appeals held that although the deprivation of the community property contri-

---

[7]The Court of Appeals affirmed the trial court's denial of DRS's motion to dismiss the declaratory judgment action. The Court of Appeals held the action was justiciable because, among other factors, the controversy was "between parties having genuine and opposing interests." *Arnold v. Department of Retirement Sys.*, 74 Wn. App. 654, 660, 875 P.2d 665 (1994) (quoting *Nollette v. Christianson*, 115 Wn.2d 594, 598, 800 P.2d 359 (1990)). This conclusion is dubious. DRS is only a stakeholder; its interest in the distribution of Mr. Arnold's death benefit is not adverse to Ms. Arnold's. Rather, the parties who have the "genuine and opposing interests" are the statutory beneficiaries under RCW 41.26.160 who would be deprived of the death benefit if Ms. Arnold were to receive it. They are not parties to this case, however. Because a decision by this court affirming the Court of Appeals would divest those beneficiaries of their present rights under the LEOFF statute without affording them notice and an opportunity to be heard, they appear to be indispensable parties under CR 19(a). There is, therefore, at least a question of whether this case ought to be dismissed because of the absence of indispensable parties. Because we reverse the Court of Appeals on other grounds, judicial economy is better served by not compelling the parties to relitigate this issue.

bution to LEOFF violated neither substantive due process nor the equal rights amendment, "RCW 41.26.160(1) and (2) and RCW 41.26.030(6), insofar as they operate to deprive former spouses of their half of community contributions to the LEOFF fund without notice and a prior hearing, violate constitutional rights to procedural due process." *Id.* at 667. The Court of Appeals opinion does not state whether Ms. Arnold must be afforded a hearing by DRS on her interest in Mr. Arnold's LEOFF death benefit or whether the invalidation of the statutes forecloses payment of any death benefits under RCW 41.26.160.

■ DRS petitioned for review on the sole issue of whether RCW 41.26.160 violates due process. Pet. for Review at 1. We granted the petition. Because application of RCW 41.26.160 requires reference to the statutory definition of "surviving spouse" at RCW 41.26.030(6), both statutes are encompassed in the petition for review. Ms. Arnold did not file an answer or cross-petition raising the other constitutional issues she originally articulated in her complaint below. We decline to address those issues not properly raised in an answer to DRS's petition for review. RAP 13.4(d).

## ANALYSIS

■ The Court of Appeals declared RCW 41.26.030(6) and RCW 41.26.160 to be unconstitutional because the challenged statutes deprived Ms. Arnold of her due process right to contest the loss of the LEOFF death benefit. Our courts traditionally decline to find statutes unconstitutional so facilely: "When interpreting a statute, every presumption favors the validity of an act of the Legislature, all doubts must be resolved in support of the act, and it will not be declared unconstitutional unless it clearly appears to be so." *Grant v. Spellman*, 99 Wn.2d 815, 819, 664 P.2d 1227 (1983).

A. Ms. Arnold's Interest in the LEOFF Death Benefit

■ "The requirements of procedural due process apply

only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." *Board of Regents v. Roth*, 408 U.S. 564, 569-70, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Thus, if Ms. Arnold has no property interest in her ex-husband's LEOFF death benefit, she has not been deprived of property or a cognizable constitutional right, and the procedural due process issue vanishes. The most difficult issue present in this appeal is the characterization of Ms. Arnold's interest in the LEOFF death benefit of her ex-husband, who is not yet deceased.

The question of whether there is a community property interest in a LEOFF death benefit is one of first impression in Washington. The Court of Appeals assumed Ms. Arnold had a community interest in the death benefit to the extent she could trace the benefit to community property contributions, but stated Ms. Arnold had no property interest in benefits "attributable to DRS's contributions to the LEOFF fund." *Arnold*, 74 Wn. App. at 668. DRS, however, makes no contribution to LEOFF. It administers the LEOFF fund, which consists of employee contributions, employer contributions (local police and fire departments), and legislatively appropriated moneys.

If Ms. Arnold does have any interest in the LEOFF death benefit yet to be received, it must be based on something other than the simple return of Ms. Arnold's share of the community contributions to the LEOFF fund. DRS notes that the Arnold community contributions to the LEOFF fund were exhausted long ago by disability payments to Mr. Arnold. Through December 31, 1995, DRS paid a gross benefit in excess of $230,000 to Mr. Arnold. The total Arnold community/employer contributions to the LEOFF fund during the time Mr. Arnold was employed as a firefighter were approximately $75,000, assuming interest was paid on the community/employer contributions. DRS claims that Ms. Arnold herself has received nearly $80,000 through the end of 1995 as her 30 percent

share of Mr. Arnold's disability income. Supplemental Br. of Pet'r at 15.

Ms. Arnold argues cursorily and without analysis or citation to authority that because the LEOFF death benefit is a continuation of her interest in her ex-husband's disability/retirement award, she has a continuing interest in it. Br. of Appellant at 38-39. Amicus Northwest Women's Law Center argues the death benefit is another form of deferred compensation, like a pension plan, and was therefore earned during the Arnold marriage. Supplemental Br. of Amicus Curiae Northwest Women's Law Center at 3-6.

DRS argues that the LEOFF death benefit is not subject to characterization under RCW 26.16, as Ms. Arnold has no property interest in the benefit: "Death benefits are separate benefits created by the Legislature for statutorily designated beneficiaries, i.e., dependents of the deceased LEOFF member. Mr. Arnold has no property interest at all in the death benefit provided to statutory beneficiaries under LEOFF." Br. of Resp't at 38-39. DRS further argues that Ms. Arnold's claim to the death benefit is a mere expectancy, not a property interest, because her claim depends upon the occurrence of two contingencies: that Mr. Arnold predecease her and that she be his spouse at the time of his death. Supplemental Br. of Pet'r at 3.

In determining how to characterize Ms. Arnold's interest in the LEOFF death benefit, we must resort to basic principles. LEOFF is funded by a combination of employee contributions, employer contributions, and direct legislative appropriations. In fact, because the unfunded liability in LEOFF was so substantial upon the State's assumption of responsibility for the system, legislative appropriations to reduce the unfunded liability have been *very* substantial. RCW 41.26.080. For example, in the 1995-97 biennial budget, the Legislature appropriated $175 million to reduce this unfunded liability in LEOFF. Laws of 1995, 2d Sp. Sess., ch. 18, § 712. Thus, employer and employee contributions play a more limited role in paying for the

system than is true for the more traditional pension system. LEOFF is unusual in that it has characteristics of a retirement system, RCW 41.26.090 (retirement for service), and a disability plan, RCW 41.26.120 (retirement for disability in the line of duty); RCW 41.26.125 (retirement for disability off duty); RCW 41.26.160 (death benefits).[8]

Under RCW 41.26.160(1), the death benefit is paid as follows:

(1)   In the event of the death of any member who is in active service, or who has vested under the provisions of RCW 41.26.090 with twenty or more service credit years of service, or who is on disability leave or retired, whether for disability or service, the surviving spouse shall become entitled to receive *a monthly allowance equal to fifty percent of the final average salary at the date of death if active*, or the amount of retirement allowance the vested member would have received at age fifty, *or the amount of the retirement allowance such retired member was receiving at the time of death if retired for service or disability*. The amount of this allowance will be increased five percent of final average salary for each child as defined in RCW 41.26.030(7), as now or hereafter amended, subject to a maximum combined allowance of sixty percent of final average salary: PROVIDED, That if the child or children is or are in the care of a legal guardian, payment of the increase attributable to each child will be made to the child's legal guardian or, in the absence of a legal guardian and if the member has created a trust for the benefit of the child or children, payment of the increase attributable to each child will be made to the trust.

(Emphasis added.) Plainly, the statute generally contem-

---

[8]Arguably, the LEOFF death benefit has characteristics of a disability payment in that it pays benefits to a statutory class of survivor regardless of whether the member was eligible for service retirement or disability retirement at the time of death. RCW 41.26.160(1) (surviving spouse receives 50 percent of member's final average salary regardless of length of marriage or length of service). It has characteristics of a continuation of service retirement benefits or disability retirement benefits as it makes payments to a statutory class of survivors if the member dies after retirement. RCW 41.26.160(2); RCW 41.26.130(1)(a); RCW 41.26.030(6) (surviving spouse receives various amounts based on length of service and member's final average salary).

plates payments that substitute for future lost earnings to a legislatively described class of *dependents*.[9]

■ In the one Washington case dealing with the allocation of a statutory survivorship benefit at the time of a dissolution, *Clingan v. Department of Labor & Indus.*, 71 Wn. App. 590, 860 P.2d 417 (1993), the Court of Appeals affirmed a trial court judgment that Mrs. Clingan did not qualify for a survivorship benefit under RCW 51.32.050(b), a statute similar to the one at bar, because a divorced spouse could not be a "surviving spouse."[10] The court said:

> At the time of the dissolution, Mrs. Clingan did not have a right to receive a portion of Mr. Clingan's pension because it was a statutory entitlement personal to him and could not be divided in a property settlement. In fact, had Mr. Clingan's right to receive the pension been apportioned according to community property tenets or by agreement of the parties, that division would have been void. Nor did Mrs. Clingan have a right to a survivorship benefit at the time of the dissolution because it is a statutory right that does not arise until the death of the worker.

(Citations omitted.) *Clingan*, 71 Wn. App. at 594. A statutory entitlement cannot be divided in a dissolution decree because DRS must comply with the statutory scheme. *Horowitz v. Department of Retirement Sys.*, 96 Wn.2d 468, 635 P.2d 1078 (1981).

Cases from other jurisdictions have held survivorship benefits to be a property interest subject to the state community property laws. In *Rivieccio v. Bothan*, 27 Cal. 2d 621, 625, 165 P.2d 677, 680 (1946), Justice Traynor stated without analysis that a surviving widow's claim to her deceased husband's workers' compensation death benefit involved a property interest. That statement is dictum, because it did not address the issues on appeal, nor has

---

[9]The statute also permits the death benefits to be paid to the member's estate in the event that there are no dependents. RCW 41.26.160(4).

[10]A worker does not contribute to the Accident Fund created by RCW 51.44.010 from which the survivorship benefit is paid. RCW 51.16.140; RCW 51.44.070.

any court since cited *Rivieccio* for the proposition that a statutory death benefit is a community property interest. The Arizona Supreme Court held in *Carpenter v. Carpenter*, 150 Ariz. 62, 722 P.2d 230 (1986), that a statutory death benefit was a community property interest, and awarded to an ex-spouse her one-half community share in the death benefit when the ex-husband died. Crucial to the court's consideration was the failure of the dissolution court to dispose of the respective community interests in the husband's pension plan. The court in *Narva v. Commissioner of Corps. and Taxation*, 358 Mass. 648, 266 N.E.2d 638, 640 (1971), characterized a death benefit as an aspect of deferred compensation in determining the taxability of a widow's receipt of payments from the death benefit.

Some courts have found survivorship benefits are not a property interest. In *Lack v. Lack*, 584 S.W.2d 896 (Tex. Ct. App. 1979), a case involving the claim by an ex-wife to a deceased firefighter's statutory death benefit, a case on all fours with the present case, except for the fact that Mr. Arnold is still alive, the court held that because "the right to death benefits can never be established until the death of the participant, such benefits are not property acquired during marriage, and, therefore, are not community property." *Lack*, 584 S.W.2d at 899. *Accord Duckett v. Board of Trustees, City of Houston Firemen's Relief & Retirement Fund*, 832 S.W.2d 438, 442 (Tex. Ct. App. 1992) (because of statutory scheme, ex-wife not entitled to pro-rata share of firefighter's statutory death benefit even though pro-rata share would otherwise be community property, citing *Lack*). *But see Lack*, 584 S.W.2d at 900 ("the majority opinion, in refusing to hold that the death benefits are community property, ignores the rule of community property law that spouses share in property earned during marriage") (Robertson, J., dissenting).[11]

Under Washington's community property law, all prop-

---

[11]The *Lack* decision was criticized in Steven R. Brown, *An Interdisciplinary Analysis of the Division of Pension Benefits in Divorce and Post-Judgment Partition Actions: Cures for the Inequities in Berry v. Berry*, 39 BAYLOR L. REV. 1131, 1214-15 (1987), and Joseph W. McKnight, *Family Law: Husband and Wife*, 34 SW. L.J. 115, 123 (1980).

erty acquired after marriage by either spouse is presumed to be community property. RCW 26.16.030. Under this general presumption, Washington courts have held that retirement income is appropriately characterized as deferred compensation for past services. *Bakenhus v. City of Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956). That portion of the retirement income earned during the existence of the community may be divisible as community property in a dissolution proceeding. *Farver v. Department of Retirement Sys.*, 97 Wn.2d 344, 644 P.2d 1149 (1982) (State trooper pension); *Wilder v. Wilder*, 85 Wn.2d 364, 534 P.2d 1355 (1975) (military pension); *Payne v. Payne*, 82 Wn.2d 573, 512 P.2d 736 (1973) (military pension). This principle extends to LEOFF pension benefits. *Kollmer*, 73 Wn. App. 373; *Devine v. Devine*, 42 Wn. App. 740, 711 P.2d 1034 (1985). Our courts have also held there is "no distinction between a retirement plan financed through employee salary deduction and one financed exclusively by the employer. If the employee is married, the plan is financed and rights are being purchased either by community funds or community labor." *DeRevere v. DeRevere*, 5 Wn. App. 741, 745-46, 491 P.2d 249 (1971) (relying on WILLIAM Q. DEFUNIAK & MICHAEL J. VAUGHAN, PRINCIPLES OF COMMUNITY PROPERTY § 68, at 149 (2d ed 1971)).

Despite the general community property presumption under RCW 26.16.030, Washington courts have refused to treat disability income, including disability pensions, as community assets subject to allocation in a dissolution proceeding in the absence of substantial elements of either deferred compensation or retirement. Such payments are for lost future income and are not "earned" as are retirement benefits. *Huteson*, 27 Wn. App. 539 (Pearson, J.) (firefighter became disabled seven months after separation but long before eligibility for service retirement; disability payments held to be separate property). Our courts have, however, looked carefully at the payment received by the pension system member to determine whether the

payment has characteristics of an earned pension in addition to disability. *In re Anglin*, 52 Wn. App. 317, 759 P.2d 1224 (1988) (police officer became disabled before age 50, the normal LEOFF retirement age; disability payments held to be separate property); *Kollmer*, 73 Wn. App. at 378 (police officer became disabled at age 35 and was divorced at age 48; ex-spouse was awarded one-third of his monthly disability payment on the theory that this portion of the disability pay substituted for retirement pay, but only upon reaching age 50, the normal LEOFF retirement age). *See also In re Leland*, 69 Wn. App. 57, 847 P.2d 518, *review denied*, 121 Wn.2d 1033 (1993); *In re Nuss*, 65 Wn. App. 334, 828 P.2d 627 (1992).

■ We agree with the Court of Appeals in *Clingan* that the Legislature may establish by statute the designated beneficiaries of a statutory death or survivorship benefit, notwithstanding traditional community property principles. Two California cases support this view. In *In re Becker*, 161 Cal. App. 3d 65, 207 Cal. Rptr. 392 (1984), Mr. Becker had been a member of the California Public Employees Retirement System. He divorced his first wife after a 36-year marriage, remarried, and died. His second wife, as the surviving spouse, began receiving Becker's survivor's benefit annuity, pursuant to California law which designated the surviving spouse as the beneficiary. *Becker*, 161 Cal. App. 3d at 69. The first wife sued, asserting she had a community property right to receive one-half of the community contributions to the retirement fund. In its analysis, the court had no problem with the statute. "The statutory prescription that the monthly allowance be paid to the surviving spouse is mandatory." *Becker*, 161 Cal. App. 3d at 73. No community property interest could surmount the plain language of the statute.

*In re Carnall*, 216 Cal. App. 3d 1010, 265 Cal. Rptr. 271 (1989), is very nearly on all fours with the case at bar. Cheryl and Robert Carnall were married for 18 years. When they divorced, Robert was still employed by the City of Los Angeles, and still a member of the Los Angeles

County Employees Retirement Association. At the divorce trial, Cheryl obtained an order designating her as Robert's "surviving spouse" so that she would be able to obtain a share of the benefits under the retirement system a surviving spouse would be entitled to. The court observed that Cheryl did indeed have a community property right to Robert's retirement benefits, but that under the applicable statute, she could not be Robert's "surviving spouse" because Robert was still alive and because she was not his spouse. Thus, the court vacated the lower court's order designating Cheryl as the surviving spouse.

Our determination that the Legislature's designation of the beneficiaries of the statutory death benefit supersedes characterization of the interest under community property principles does not render RCW 41.26.030(6) and RCW 41.26.160 unconstitutional, even though ex-spouses like Ms. Arnold arguably have been deprived of appropriate recompense. We have fashioned a remedy under RCW 26.09.080 for such ex-spouses.

### B. Ms. Arnold Was Afforded Due Process in Her Dissolution Proceedings

Although Ms. Arnold has couched her complaint as a claim for the LEOFF death benefit, her core contention is that she did not receive a fair, just, and equitable distribution of marital assets under RCW 26.09.080 upon the dissolution of her marriage. RCW 26.09.080 requires the court in a dissolution proceeding to allocate the spouses' community property and separate property, and it may consider the "economic circumstances" of each spouse at the time of the property division. "The statute directs the trial court to weigh all of the factors, within the context of the particular circumstances of the parties, to come to a fair, just and equitable division of property. The character of the property is a relevant factor which must be considered, but is not controlling." *In re Konzen,* 103 Wn.2d 470, 478, 693 P.2d 97, *cert. denied,* 473 U.S. 906 (1985).

■ ■ With respect to the application of RCW 41.26.030(6) and RCW 41.26.160 in her case, Ms. Arnold was afforded ample due process in her dissolution action because the court in that action had the authority to give Ms. Arnold appropriate credit in the property division under RCW 26.09.080 for Mr. Arnold's LEOFF death benefit. Our courts in dissolution cases have frequently considered situations in which the application of a statute prevents division of what might otherwise have been considered community assets. In such circumstances, the appellate courts have held that the trial court can take into account the economic circumstances of the parties to justify a disproportionate award of community property.

For example, federal law may supersede the characterization of assets under Washington's community property law. *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981) (military retirement pay not divisible in accordance with state community property laws).[12] In *Barros v. Barros*, 34 Wn. App. 266, 660 P.2d 770 (1983), Anna Barros and John Barros, a member of the military, were married for 18 years. They divorced in 1973. The divorce decree was silent as to the disposition of John's military retirement fund, although both the findings of fact and conclusions of law listed the retirement fund as community property. John remarried almost immediately, and then died three years later. His second wife began receiving the monthly annuity benefit under the Survivor Benefit Plan John had elected.[13] Anna sued, claiming a one-half community property interest in the monthly payments the new wife was receiving. The Court of Appeals noted that Anna had a community property interest in the Survivor Benefit Plan payments under Washington case law, citing *Chase v. Chase*, 74 Wn.2d 253, 444 P.2d

---

[12]Congress effectively overruled *McCarty* by enacting the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408.

[13]"In 1972, Congress created the SBP to provide income to the surviving spouses of members of the military services who die after becoming eligible to retire." *Weinfield v. United States*, 8 F.3d 1415, 1416 (9th Cir. 1993). *See* 10 U.S.C. §§ 1447 et seq.

145 (1968), but held that the federal statute governing the Survivor Benefit Plan preempted state community property law. *Barros*, 34 Wn. App. at 269. Since Anna was no longer John's wife, she had no entitlement to any of the SBP payments.

In *In re Kraft*, 119 Wn.2d 438, 832 P.2d 871 (1992), we considered the proper way to observe contemporaneously both RCW 26.09.080, requiring "just and equitable" division of community assets, and the federal law preventing a military retiree's disability pay, when taken in lieu of military retirement pay, from being divided. We said:

> [W]hen making property distributions or awarding spousal support in a dissolution proceeding, the court may regard military disability retirement pay as future income to the retiree spouse and, so regarded, consider it as an economic circumstance of the parties. In particular, the court may consider the pay as a basis for awarding the nonretiree spouse a proportionately larger share of the community property where equity so requires.

*Kraft*, 119 Wn.2d at 447-48.[14]

Ms. Arnold had an opportunity to obtain appropriate consideration of her interest in Mr. Arnold's LEOFF death benefit. The teaching of *Kraft* is that when a court is statutorily unable to award a portion of what might otherwise be a community asset to one spouse upon dissolution, the court may consider the economic circumstances of the parties to justify a disproportionate award of community property. We cannot tell from the record on appeal whether Ms. Arnold's dissolution court specifically made such a disproportionate award, but Ms. Arnold actually received a share of Mr. Arnold's LEOFF disability

---

[14]*Accord Konzen*, 103 Wn.2d 470; *In re Brown*, 98 Wn.2d 46, 49, 653 P.2d 602 (1982); *In re Washburn*, 101 Wn.2d 168, 181, 677 P.2d 152 (1984); *DeRuwe v. DeRuwe*, 72 Wn.2d 404, 408, 433 P.2d 209 (1967); *Stacy v. Stacy*, 68 Wn.2d 573, 576-77, 414 P.2d 791 (1966); *In re Parks*, 58 Wn. App. 511, 516 n.4, 794 P.2d 59 (1990); *In re Haugh*, 58 Wn. App. 1, 11, 790 P.2d 1266 (1990); *In re Tower*, 55 Wn. App. 697, 699-700, 780 P.2d 863 (1989), *review denied*, 114 Wn.2d 1002 (1990); *In re Roark*, 34 Wn. App. 252, 254-55, 659 P.2d 1133 (1983); *In re Barrett*, 33 Wn. App. 420, 424, 655 P.2d 257 (1982).

payments and certainly had the opportunity to contend for a disproportionate award, with substantial case authority to support the contention.[15]

Ms. Arnold was entitled to a just and equitable distribution of marital assets and had the opportunity to assert in the dissolution action what a just and equitable distribution of the marital assets was. RCW 26.09.080. The dissolution trial was the appropriate forum for her to present her arguments regarding the marital assets. To the extent she was aggrieved by the dissolution court's treatment of the LEOFF death benefit, she was obliged to appeal. She did not do so. She cannot tenably maintain now that she has not had the opportunity to assert her claim to a portion of the LEOFF death benefit.

## CONCLUSION

RCW 41.26.030(6) and RCW 41.26.160 are not violative of procedural due process. The Legislature may establish the class of beneficiaries for a statutory death or survivorship benefit, notwithstanding community property principles. The LEOFF death benefit was properly before the dissolution trial court for consideration of a just and equitable distribution of the spouses' marital assets under RCW 26.09.080. Regardless of any constitutional theories she may now advance, Ms. Arnold had her day in court in her dissolution action to receive appropriate consideration of Mr. Arnold's LEOFF death benefit in the property division.

We reverse the Court of Appeals and remand the case to the trial court for reinstatement of the trial court's dismissal of Ms. Arnold's complaint with prejudice.

---

[15]It may be that the dissolution court gave Ms. Arnold credit for her community property share of the LEOFF death benefit by requiring Mr. Arnold to pay her 30 percent of his retirement/disability income. *See* n.3, *supra*.

DURHAM, C.J., DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., and PEKELIS, J. Pro Tem., concur.