[No. 18074-0-II. Division Two. August 9, 1996.]
*In the Matter of the Marriage of* ELAINE K. GEIGLE, *Respondent,* and WALLACE GEIGLE, *Appellant.*

24

*John M. Clark*, for appellant.

*Robert B. Taub, John P. Maier,* and *Robert B. Taub & Associates,* for respondent.

MORGAN, J. — In this dissolution case, the husband appeals the trial court's division of property. We affirm.

In 1972, Wallace and Elaine Geigle were married. According to their later decree of dissolution, Wallace already had three-and-a-half years of credited federal employment. In 1974, Wallace went to work for the Veterans Administration Hospital in Vancouver, Washington. In 1983, Wallace ceased working at the hospital after suffering a back injury, apparently while on the job. The same year, according to his brief, "he was found to be totally disabled from employment by the United States Department of Labor and was awarded federal workman's compensation benefits" under the Federal Employee's Compensation Act, 5 U.S.C. §§ 8101-8193.[1] Benefits under that Act are administered by the Office of Workers' Compensation Programs (OWCP), whereas ordinary federal retirement benefits are administered by the Office of Personnel Management (OPM).

Elaine filed for dissolution in July 1992, and trial was held in December 1993. Elaine retained counsel, but Wallace chose to represent himself.

At the time of trial, Elaine was 72 years old and was receiving Social Security of $508 per month. Wallace was 63 years old and, according to his testimony, suffered from

[1]Brief of Appellant at 2.

Parkinson's disease. He was entitled to Social Security of $149 to $153 per month, but was not yet drawing it. He was receiving $1860.24 per month in OWCP total disability benefits, but these would drop to $1654.37 per month after dissolution.[2] His OWCP benefits were subject to his continuing total disability, as verified by periodic physical examinations.[3]

On February 18, 1994, the trial court entered findings of fact and a decree of dissolution. The decree characterized as community property, and awarded to Wallace, his OWCP total disability benefits,[4] a partially completed house on 1.7 acres in Grays River, Washington, a mobile home, building materials related to the Grays River house, various cars, boats, sporting goods, and tools, and all personal property then in his possession. The decree characterized as community property, and awarded to Elaine, a duplex on 5.18 acres in Ridgefield,[5] an adjacent 22-acre wooded tract, a cemetery lot, a car, a motor home, a revolver, and personal property in her possession unless otherwise awarded to Wallace. The decree also awarded to Elaine, as separate property, "18 ladies diamond sets with

---

[2]OWCP benefits are calculated based on a percentage of the employee's last pay rate, adjusted each year for cost of living. The base rate is 66 2/3 percent, with an additional 8 1/3 percent available for employees who have a spouse or dependent children. Because the Geigles did not have dependent children at the time of trial, Wallace's benefit level, based on 75 percent of his pay rate, would drop to 66 2/3 percent, or $1654.37, after dissolution. 5 U.S.C. §§ 8105, 8110; *see also* Report of Proceedings I at 35-36; Report of Proceedings V at 16-18; Supplemental Ex. 2 at 3.

[3]5 U.S.C. § 8123; *see also* 5 U.S.C. § 8128 ("The Secretary of Labor may review an award for or against payment of compensation at any time . . . .")

[4]Under a heading stating "Community Property," the trial court awarded Wallace "[t]he Civil Service Disability Retirement benefits accruing to the Respondent." Clerk's Papers at 16. Under a heading stating "Separate Property," the trial court awarded Wallace "[t]hat portion of the Civil Service Disability Retirement pay received by the Respondent represented by 3.5 years of credited service prior to the marriage herein." Clerk's Papers at 21.

[5]One-half of the duplex is income producing property. According to Wallace's testimony, the duplex rental is $695 per month, and Elaine receives an additional $200 per month as rent on a mobile home. Report of Proceedings IV at 15.

appraisals[, t]rays of rings and other jewels" inherited from her mother.[6]

In valuing and characterizing Wallace's OWCP benefits, the trial court used a pension service's appraisal of the benefits' present value. The appraisal was presented by Elaine. The pension service assumed that the benefits were paid as a vested annuity under the Civil Service Retirement system, and that Wallace "has the life expectancy of a healthy American."[7] Using the pension service's formula and a monthly benefit of $1654.37, the trial court calculated that Wallace's OWCP benefits had a present value of $227,624.

The trial court also assigned present values of $59,100 to Elaine's Social Security benefits; $15,000 to Wallace's potential Social Security benefits; $138,400 to the Ridgefield duplex and land; and $110,000 to the 22 acres. It also assigned a value of $25,000 to the Grays River land, incomplete house, and building materials. With respect to the Grays River land, it stated:

> My opinion is that at least there's $25,000 worth of value up there in some way, shape or other, and probably a lot more . . . . I'm putting minimum values on what I believe Mr. Geigle has, and I want that clear. I believe the Grays River property, my personal feeling is, it's worth more than the figure I'm putting on it. It's worth at least that, but I don't think Mrs. Geigle is asking for anything more than I'm giving her; therefore, even if I've slightly underestimated his, I don't think it creates a problem.[8]

The court apparently did not assign values to the contents of the family home, including jewelry, a coin collection, furnishings and appliances, all of which it awarded to Elaine. The court stated it was awarding Elaine the

---

[6]Clerk's Papers at 24.

[7]Exhibit 27 at 2.

[8]Report of Proceedings VI at 20-22.

income-producing Ridgefield duplex "so she will have enough income to survive."[9]

Based on the trial court's values and calculations, Elaine received $305,500 in assets and post-dissolution income of perhaps $1400 per month.[10] Wallace received $267,000 in assets and post-dissolution income of perhaps $1650 per month. The trial court recognized that this division resulted in Elaine's receiving slightly more than half the marital assets, but felt the division was equitable in light of the parties' respective incomes. Wallace now appeals.

## Issues

Wallace first contends that the trial court erred in treating Wallace's OWCP benefits as a divisible asset. According to him, (A) OWCP benefits are not assignable under federal law, and (B) even if they are, they are a substitute for future earnings (as opposed to compensation earned during marriage, the payment of which was deferred). According to Elaine, Wallace waived review by failing to raise these issues at trial.

## A

According to Wallace, 5 U.S.C. § 8130 preempts Washington law to the extent Washington law would otherwise allow a trial court to consider OWCP benefits as divisible community property. That statute provides: "An assignment of a claim for compensation under this subchapter is void. Compensation and claims for compensation are exempt from claims of creditors."

 Generally, state family law will not be preempted unless it does "major damage" to "clear and substantial"

---

[9]Report of Proceedings VI at 19.

[10]According to Wallace, Elaine's post-dissolution income would be her social security of $508, plus about $900 rent on half the Ridgefield duplex and a mobile home.

federal interests.[11] Whether it is preempted depends upon whether the right being asserted conflicts with the express terms of federal law, and whether its consequences injure the objectives of the federal program to such a degree as to require nonrecognition.[12]

■ At least two state courts have rejected the preemption argument that Wallace makes here.[13] In *Anthony*, the court compared 5 U.S.C. § 8130 to the Railroad Retirement Act (RRA) and VA disability benefits. The RRA provided that such payments shall not be subject to any "legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated . . . ."[14] The VA statute provided that VA benefits shall not be assignable and "shall not be liable to attachment, levy or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary . . . ."[15] The *Anthony* court reasoned:

[Section 8130] in no way renders such benefits exempt from court process, nor expresses any congressional intent to remove these benefits from the normal operation of family law in the various states.

Section 8130 does render void an assignment of the claim. An assignment is something done by the beneficiary (usually for the benefit of creditors), not by a court dividing a property right. In no way can appellee be considered a creditor. [citation omitted].

If Congress had intended to exempt the proceeds from court

---

[11]*McCarty v. McCarty*, 453 U.S. 210, 220, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981) (relating to military retirement pay); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979) (relating to Railroad Retirement Act).

[12]*McCarty*, 453 U.S. at 221; *Barros v. Barros*, 34 Wn. App. 266, 269, 660 P.2d 770, *review denied*, 100 Wn.2d 1022 (1983).

[13]*See Anthony v. Anthony*, 624 S.W.2d 388, 391 (Tex. Ct. App. 1981); *Leisure v. Leisure*, 589 N.E.2d 1163 (Ind. Ct. App. 1992), *aff'd on other grounds*, 605 N.E.2d 755 (Ind. 1993).

[14]45 U.S.C. § 231m (Supp. 1980).

[15]38 U.S.C. 3101(a) (1979).

process, it would have used language as it did in the Railroad Retirement Act or as it did with benefits administered by the Veterans Administration.[16]

Citing *Anthony,* the *Leisure* court said:

5 U.S.C. § 8130 simply renders void the assignment of a claim and provides that compensation is exempt from claims of creditors. Because of the presumption that state domestic relations law is unaffected by federal law, we should not read such language to prohibit a state court from exercising its power to divide marital assets pursuant to dissolution proceedings.[17]

Finding these cases persuasive, we reject Wallace's argument regarding federal preemption.

## B

■■■ Wallace argues that even if state law applies, his OWCP benefits are "divisible in a dissolution proceeding only to the extent that they represent deferred compensation for past services."[18] In Washington,

[d]isability payments which are solely meant to compensate an individual for lost postdissolution wages are not considered an asset divisible upon dissolution. *In re Marriage of Nuss,* 65 Wn. App. 334, 343, 828 P.2d 627 (1992); *In re Marriage of Anglin,* 52 Wn. App. 317, 324, 759 P.2d 1224 (1988). On the other hand, retirement income is properly characterized as deferred compensation for past services and, thus, any portion of retirement income that was earned during the existence of the community is divisible upon dissolution. *Nuss,* 65 Wn. App. at 343.[19]

---

[16]*Anthony,* 624 S.W.2d at 391.

[17]*Leisure,* 589 N.E. 2d at 1173.

[18]Brief of Appellant at 10.

[19]*In re Marriage of Kollmer,* 73 Wn. App. 373, 375, 870 P.2d 978, *review denied,* 124 Wn.2d 1022 (1994); *see also In re Marriage of Dugan-Gaunt,* 82 Wn. App. 16, 915 P.2d 541, 543 (1996); *In re Marriage of Huteson,* 27 Wn. App. 539, 619 P.2d 991 (1980) (husband's disability payment not a divisible marital asset when he had not worked long enough to qualify for retirement pay); *cf. Arnold v. Department of Retirement Systems,* 128 Wn.2d 765, 777-79, 912 P.2d 463 (1996).

If, however, a party would be receiving retirement benefits but for a disability, so that disability benefits are effectively supplanting retirement benefits, the disability payments are a divisible asset to the extent they are replacing retirement benefits.[20]

Wallace candidly acknowledges the key problem in this case. He states:

> Some confusion existed at trial about the nature of the benefits received by Wallace. At times, Wallace referred to them as "workman's compensation" or "disability" payments. At other times, he referred to them as "retirement" or "pension" benefits.[21]

The confusion, however, was only partial. An employee can be both disabled and retired, as shown by the cases just cited. Under federal law, an employee receiving total disability OWCP benefits may not also receive OPM benefits for the same period of time. 5 U.S.C. § 8337(f)(1).[22] Instead, the employee must make an election, 5 U.S.C. § 8116,[23] and to elect OWCP benefits is to forego OPM

---

[20]*Kollmer*, 73 Wn. App. at 377 (quoting *Nuss*, 65 Wn. App. at 343); *In re Marriage of Leland*, 69 Wn. App. 57, 73, 847 P.2d 518, *review denied*, 121 Wn.2d 1033 (1993).

[21]Brief of Appellant at 7.

[22]Section 8337(f)(1) provides:

An individual is not entitled to receive an annuity under this subchapter, and compensation for injury to, or disability of, such individual under subchapter I of chapter 81, other than compensation payable under section 8107, covering the same period of time.

[23]Section 8116 provides:

An individual entitled to benefits under this subchapter because of his injury . . . who is also entitled to receive from the United States under a provision of statute other than this subchapter payments or benefits for that injury . . . because of service by him . . . shall elect which benefits he will receive. The individual shall make the election within 1 year after the injury . . . . The election when made is irrevocable, except as otherwise provided by statute.

benefits.[24] Here, the record clearly shows that Wallace had elected OWCP benefits in lieu of OPM benefits, and that he would have been receiving OPM benefits had he not been receiving OWCP benefits. Indeed, he expressly acknowledged during trial that he was "retired," and that his OWCP benefits were his "pension."[25]

■ Although there is no confusion over the fact that Wallace would have been receiving part of his benefits even if he had not been disabled, there is much confusion over *what part* of his benefits he would have been receiving. Neither he nor Elaine produced documents or other evidence from which the trial court could have segregated funds reflecting deferred compensation (i.e., retirement benefits) from funds reflecting future income. Moreover, neither requested the trial court to make such a segregation, and the trial court did not do so.

Wallace's main argument is that the trial court was required to segregate sua sponte, in light of Wallace's self-representation and "the trial court's significant involvement at trial."[26] Our view, however, is to the contrary. Although we know of no authority directly on point, we think that if part of a stream of income is divisible between spouses as deferred compensation earned during marriage, and part is not divisible between spouses because it replaces future income, the recipient spouse has the burden of providing the documents or other infor-

---

[24]*Grady v. Office of Personnel Management*, 50 M.S.P.R. 23, 26-27 (1991) (decision of the Merit Systems Protection Board).

[25]The following colloquy appears at Report of Proceedings III at 48:

Trial court: But you're still . . .
Mr. Geigle: But, basically I am retired.
Trial court: It's your pension?
Mr. Geigle: My pension, yes, sir.
Trial court: So it has to be included in the overall value.
Mr. Geigle: Yes, sir, I understand that. As her social security, right?
Trial court: Huh?
Mr. Geigle: Her social security is the same thing, isn't it?

[26]Brief of Appellant at 17.

mation needed to segregate. We also think that the recipient spouse has the burden of asking the trial court to make a segregation. The first burden is appropriate because the recipient spouse, not the other spouse, is the one with ready access to the needed information. The second burden is appropriate because, in the general run of cases in which parties wittingly or unwittingly put a trial court to an all-or-nothing choice, it will be less unfair to include and equitably distribute the income, than to exclude and ignore it.

Here, Wallace failed to bear either burden. He did not provide the trial court with the information needed to segregate deferred compensation from future income. Nor did he request any such segregation. Given that he was receiving part of his benefits in lieu of deferred compensation, we think, as Elaine argues, that he waived the right to have a segregation, and that he is not now entitled to complain that the trial court treated his benefits as a divisible asset.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

BRIDGEWATER and TURNER, JJ., concur.