[No. 24103-3-III.   Division Three.   July 18, 2006.]

*In the Matter of the Marriage of* MARGARET KAYE ANDERSON, *Respondent*, and TERRY LEE ANDERSON, *Appellant*.

*David M. Miller*, for appellant.
*David J. Crouse*, for respondent.

¶1 KULIK, J. — This is a dispute about the division of Railroad Retirement Act of 1974 (RRA), 45 U.S.C. § 231, benefits between former spouses, Terry and Margaret Anderson. The trial court found the benefits were pension benefits, rather than disability benefits, and ordered payment to Ms. Anderson of her share of past benefits. The court also entered a qualified domestic relations order for future payments directly to Ms. Anderson. Mr. Anderson appeals. We hold that these are pension benefits and affirm the trial court's award to Ms. Anderson.

## FACTS

¶2 Mr. and Ms. Anderson married in November of 1961 and divorced in March of 1988. Mr. Anderson worked for the

railroad during the marriage. The dissolution decree awarded Ms. Anderson a portion of Mr. Anderson's Tier II railroad benefits: either two-thirds or $200 of that benefit per month, whichever was less, at the time that she "becomes entitled to it." Clerk's Papers (CP) at 5.

¶3 In March of 1994, Mr. Anderson began drawing what he termed "disability" from his RRA Tier II benefits. CP at 46. Mr. Anderson submitted a letter from the Railroad Retirement Board (railroad board). The letter shows that Tier II benefits may be received by one who has become disabled after at least 10 years of railroad service.

¶4 Mr. Anderson did not tell Ms. Anderson he was receiving monthly benefits. When Ms. Anderson learned that her husband was receiving funds from his Tier II benefits, she moved the trial court for an order establishing a judgment for past benefits and for a qualified domestic relations order (QDRO) for future payments. In response, Mr. Anderson asserted that the benefits received were disability benefits and were therefore not subject to division under the decree as Tier II pension benefits.

¶5 The trial court granted Ms. Anderson's motion for a judgment against Mr. Anderson for $200 for each month that Mr. Anderson drew the Tier II benefits. The court also entered a QDRO requiring the railroad board to make payments of $200 per month directly to Ms. Anderson during the period Mr. Anderson received the Tier II benefits. Mr. Anderson appeals.

## ANALYSIS

*1. Does Ms. Anderson have a valid interest in the Tier II benefits?*

¶6 Mr. Anderson asserts that the railroad board told Ms. Anderson she was not entitled to a retirement pension as a matter of federal law because she had not "perfected" her interest. Mr. Anderson suggests the letter from the board supports his position. However, the term "perfected interest" is not used in the letter. We assume that Mr. Anderson

uses the term "perfected interest" to mean a valid and vested interest in the Tier II payments.

¶7 Retirement pensions for railroad workers are governed by the federal RRA. *See* 45 U.S.C. § 231. The RRA provides two tiers of benefits that resemble a social welfare plan and a private pension plan. These two levels are generally referred to as Tier I and Tier II benefits. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 574, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979). Tier I benefits are the larger of the two benefits and are the equivalent of the benefits that the railroad employee would have received if covered by the Social Security Act, 42 U.S.C. §§ 301-1397jj. *Id.* at 575. Mr. Anderson's Tier I benefits are not in dispute here. Tier II benefits function as a private pension, and benefits are contingent upon earnings and career service. *Id.* at 574.

¶8 The United States Supreme Court previously ruled that Tier I and Tier II benefits of the RRA could not be distributed or considered as assets for purposes of a divorce or dissolution proceeding. *See Hisquierdo*, 439 U.S. 572. In response to *Hisquierdo*, Congress amended section 231m of the RRA to provide:

> This section shall not operate to prohibit the characterization or treatment of that portion of an annuity under this subchapter which is not computed under section 231b(a), 231c(a) or 231c(f) of this title, or any portion of a supplemental annuity under this subchapter, as community property for the purposes of, or property subject to, distribution in accordance with a court decree of divorce, annulment, or legal separation or the terms of any court-approved property settlement incident to any such court decree.

45 U.S.C. § 231m(b)(2).

¶9 This amendment expressly permits the characterization of Tier II benefits as community property subject to distribution after divorce. *See Lee v. Lee*, 727 So. 2d 622, 626 (La. Ct. App. 1998); *McGraw v. McGraw*, 186 W. Va. 113, 115, 411 S.E.2d 256 (1991).

¶10 Here, the trial court correctly awarded the Tier I benefits to Mr. Anderson as his separate property. The court

also awarded a portion of Mr. Anderson's Tier II benefits to Ms. Anderson. This distribution was authorized by Congress's amendment to 45 U.S.C. § 231m.

¶11 Mr. Anderson points out that the letter from the railroad board to Ms. Anderson asserted that Ms. Anderson had not "perfected" her right to any benefits. Even if we assume this letter has legal significance for this court, Mr. Anderson mischaracterizes the contents of the railroad board's letter to Ms. Anderson.

¶12 In its letter, the railroad board told Ms. Anderson that the dissolution decree obligated Mr. Anderson, not the board, to make payments to her. The letter simply states that she must collect her share of benefits from her husband.

¶13 Mr. Anderson's claim that Ms. Anderson has not "perfected" an interest in the Tier II benefits is without merit. Ms. Anderson has a valid interest in the Tier II benefits.

*2. Were the benefits received by Mr. Anderson divisible benefits under the dissolution decree?*

¶14 Mr. Anderson next asserts that the Tier II payments he receives are disability benefits, not pension benefits, and thus are not divisible under the dissolution decree. Ms. Anderson contends that these benefits are Tier II benefits of the type contemplated by the decree of dissolution.

¶15 Under Washington community property law, all property acquired during the marriage by either spouse is presumed to be community property. *Arnold v. Dep't of Ret. Sys.*, 128 Wn.2d 765, 777-78, 912 P.2d 463 (1996). Retirement income is generally considered to be deferred compensation. *Id* at 778. The portion of retirement income earned during the marriage may be divided as community property. *Id.* In contrast, disability income is generally considered future income that is not divisible as community property unless it appears that the disability compensation has "substantial elements of either deferred compensation or retirement." *Id.*

¶16 If a party "would be receiving retirement benefits but for a disability, so that disability benefits are effectively supplanting retirement benefits, the disability payments are a divisible asset to the extent they are replacing retirement benefits." *In re Marriage of Geigle*, 83 Wn. App. 23, 31, 920 P.2d 251 (1996).

¶17 The payments received by Mr. Anderson were pension benefits under the RRA. The court determined that the decree provided that Ms. Anderson should receive payment from the Tier II benefits when Mr. Anderson received these benefits. Moreover, the trial court gave Mr. Anderson 30 days from the date of its ruling to provide additional proof that these benefits were not part of his Tier II pension annuity. Mr. Anderson did not provide this proof. The court properly characterized and awarded the Tier II benefits to Ms. Anderson.

*3. Did Ms. Anderson forfeit her right to the Tier II benefits when she remarried?*

¶18 Mr. Anderson also argues that Ms. Anderson forfeited any right to the Tier II benefits when she remarried.

¶19 In this case, three railroad retirement benefits were divided in the dissolution decree: Tier I benefits, Tier II benefits, and the divorced spouse benefit. Mr. Anderson was awarded the Tier I benefits. Ms. Anderson was awarded the divorced spouse benefit. The only benefit under the RRA that is contingent on the former spouse remaining unmarried is the divorced spouse benefit, which was awarded separately from the Tier II benefits in the dissolution decree. The divorced spouse benefit is forfeited upon remarriage. 45 U.S.C. § 231d(c)(3). The remaining Tier II benefits at issue here were to be divided between Mr. and Ms. Anderson.

¶20 Mr. Anderson's claim that Ms. Anderson forfeited her right to Tier II benefits through remarriage is without merit.

*4. Should this court bar Ms. Anderson's claims to the pension benefits based on the equitable doctrines of laches or equitable estoppel?*

¶21 A trial court's equitable power can only be exercised within the " 'framework of established "equitable principles." ' " *In re Marriage of Shoemaker*, 128 Wn.2d 116, 123, 904 P.2d 1150 (1995) (quoting *In re Marriage of Hunter*, 52 Wn. App. 265, 269, 758 P.2d 1019 (1988) (quoting *Hartman v. Smith*, 100 Wn.2d 766, 769, 674 P.2d 176 (1984))). Here, Mr. Anderson asks this court to exercise its equitable power based upon two doctrines: laches and equitable estoppel.

*Laches*

¶22 Laches is an equitable remedy that applies when: (1) a party had knowledge of facts constituting a cause of action or a reasonable opportunity to discover these facts, (2) there was an unreasonable delay in commencing the action, and (3) the delay caused damage to the other party. *See, e.g., In re Marriage of Barber*, 106 Wn. App. 390, 397, 23 P.3d 1106 (2001). Damages are an essential element of the defense of laches, and a party cannot prove damages by asserting he must do now what he has been legally obligated to do for years. *In re Marriage of Capetillo*, 85 Wn. App. 311, 318, 932 P.2d 691 (1997). Additionally, delay is only deemed unreasonable if it occurs " 'under circumstances permitting diligence.' " *Hunter*, 52 Wn. App. at 270 (quoting *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 949, 640 P.2d 1051 (1982)).

¶23 Here, Mr. Anderson claims that Ms. Anderson knew or should have known that he had become disabled because "the parties share children." CP at 65. Ms. Anderson denied knowing of Mr. Anderson's receipt of the RRA benefits until just prior to filing her order to show cause. The trial court found Ms. Anderson credible and concluded that she did not delay in filing her action. Here, the trial court did not abuse its discretion by refusing to apply the

doctrine of laches. *See, e.g., Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 848, 991 P.2d 1161 (2000).

*Equitable Estoppel*

¶24 In order for equitable estoppel to bar a claim for repayment in a dissolution action, the party seeking to avoid repayment must establish " '(1) an admission, statement, or act inconsistent with the claim afterward asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury resulting from allowing the first party to contradict or repudiate [such admission, statement, or act].' " *Hunter*, 52 Wn. App. at 271-72 (quoting *Roy v. Cunningham*, 46 Wn. App. 409, 415, 731 P.2d 526 (1986)). "Courts do not favor equitable estoppel, and the party asserting it must prove every element with clear, cogent, and convincing evidence." *Barber*, 106 Wn. App. at 396.

¶25 Mr. Anderson fails to identify any act, admission, or statement upon which he relied. He also fails to identify any manner in which he detrimentally changed his position in reliance upon Ms. Anderson's acts or statements. The trial court did not err by refusing to apply equitable estoppel.

## CONCLUSION

¶26 We hold that Ms. Anderson had a valid interest in the Tier II RRA benefits. The trial court did not err by concluding that these benefits were divisible pension benefits, and Ms. Anderson's right to these benefits did not terminate upon her remarriage. The trial court did not err by declining to apply laches or equitable estoppel to bar Ms. Anderson's claim to these benefits. Finally, the trial court properly entered the qualified domestic relations order. We affirm.

SWEENEY, C.J., and SCHULTHEIS, J., concur.