[No. 16577-5-II. Division Two. June 24, 1994.]

PATRICIA ARNOLD, *Appellant*, v. THE DEPARTMENT OF
RETIREMENT SYSTEMS, *Respondent*.

*Dianna Timm Dryden,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Zera Holland Lowe, Assistant,* for respondent.

*Deborah Maranville* on behalf of Northwest Women's Law Center, amicus curiae for appellant.

SEINFELD, J. — Patricia Arnold brought a declaratory judgment action challenging the constitutionality of the death benefit provisions of RCW 41.26, the statute that establishes and describes the Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF). She claimed that the statute discriminates against women, and thereby violates the State Equal Rights Amendment and constitutional guaranties of equal protection and due process. The Superior Court granted summary judgment in favor of the Department of Retirement Systems (DRS). Arnold appeals. DRS cross-appeals, contending that the trial court erred when it denied its motion for dismissal for want of a justiciable controversy. We reverse the grant of summary judgment.

## FACTS

Patricia and Victor Arnold were married in 1964. During the marriage, Victor worked as a firefighter for the City of Tacoma and, thus, became entitled to LEOFF-1 retirement benefits. The Arnolds made payments into the LEOFF fund with community earnings. In 1985, the Arnolds were legally separated; in 1987 Victor was injured on the job and took a disability retirement; and in 1991 the Arnold marriage was legally dissolved.

The dissolution decree divided the monthly LEOFF-1 duty disability retirement benefit payments, awarding Victor 70 percent and Patricia Arnold 30 percent. These payments cease upon the death of Victor. Pursuant to the provisions of RCW 41.26, Patricia Arnold, as a former spouse, was ineligible for Victor's LEOFF death benefits. However, she asked the dissolution court to rule the statute unconstitutional and to award her a portion of the death benefits. The dissolution court declined to do so, commenting:

> The matter of the legality of the Washington State statutory scheme regarding survivorship benefits of divorced spouses is not properly before this court nor can it compensate her [Arnold] for this potential loss. The wife [Arnold] may seek compensation for loss of any such interests through an action against the Department of Retirement Systems. This court makes no rulings regarding any such causes of action.

Patricia Arnold then brought this action against DRS for declaratory relief, challenging the constitutionality of the LEOFF statute, RCW 41.26, in effect in 1991. The thrust of her equal protection argument is that the class of retired LEOFF-1 members is predominantly male; therefore, the class of former spouses adversely impacted by the death benefit provisions of the statute is disproportionately female.

The LEOFF statute grants a surviving spouse, following the death of a LEOFF retiree, an entitlement to monthly death benefits equal to 50 percent of the amount of the retirement allowance the retiree was receiving at the time of death. RCW 41.26.160(1). Generally, the statute granted the benefit to a surviving spouse only if the spouse had been married to the LEOFF member for at least 1 year before the

member's retirement. RCW 41.26.160(2). The statute specifically excluded most divorced spouses of members from the category of "surviving spouse". RCW 41.26.030(6); RCW 41.26.162(1).[1]

In its answer and motion to dismiss, DRS contended that the issue was not ripe for adjudication. The trial court denied the motion to dismiss, concluding that the matter was ripe because: Patricia Arnold owned community property rights in LEOFF benefits; under the LEOFF statute the dissolution caused her to lose her rights to death benefits; and the "[l]oss of that security has present aspects".

Arnold moved for summary judgment, arguing that the statute (1) violated the equal rights provision of article 31, section 1 of the Washington Constitution; (2) discriminated in violation of RCW 49.60.010 and .030; (3) violated the privileges and immunities clause of article 1, section 12 of the Washington Constitution; (4) deprived her of equal protection under U.S. Const. amend. 14; and (5) deprived her of due process under article 1, section 3 of the Washington Constitution and U.S. Const. amend. 14. DRS filed a cross motion for summary judgment.

The trial court denied Arnold's summary judgment motion along with her request that it take judicial notice of the fact that the surviving spouses of LEOFF members are predominantly female. In its oral opinion, the court explained that RCW 41.26.030(6) does not violate the equal rights provision because it is gender neutral. The trial court applied a "rational basis" test to the statutory classifications and concluded that the exclusion of former spouses is "rational and defendable, in order to preserve the integrity and the solvency of the LEOFF fund and to achieve, therefore, the statutory purpose of providing death benefits to members

[1]In an amendment to the statute, effective September 1, 1991, the Legislature redefined "surviving spouse". The amendment added the following proviso to the general exclusion of divorced spouses: "except as provided in RCW 41.26.162." RCW 41.26.030(6). Under RCW 41.26.162 a former spouse qualifies as a surviving spouse if: (1) the former spouse was awarded benefits under a decree of dissolution entered after the retiree's retirement and prior to December 31, 1979; and (2) the former spouse was married to the retiree for at least 30 years, including at least 20 years prior to the retiree's retirement. RCW 41.26.162(1)(a), (b).

and their current surviving dependents." Accordingly, the trial court declined to find a statutory or constitutional violation. The trial court further concluded that while Arnold possessed a property right to a portion of that part of Victor's LEOFF retirement benefits that constituted community property, she did not have a vested property right to LEOFF death benefits. The trial court then granted summary judgment of dismissal to DRS.

Arnold moved for reconsideration under CR 59(a)(4), CR 60(b)(1), and CR 60(b)(3) contending that she had "newly discovered evidence". She submitted statistics from the Office of the State Actuary showing that as of December 31, 1990, there were 58 female and 4,305 male members of LEOFF-1. DRS opposed reconsideration, arguing that Arnold had failed to exercise due diligence or to show excusable neglect for her tardy presentation of the statistical data. The trial court refused to consider the statistical data and denied reconsideration, stating: "Even if evidence of the gender composition of LEOFF was allowed, this Court finds that it would not change the Court's ruling on the Constitutionality of RCW 41.26.030(6)."

ANALYSIS

Mootness

Although neither party raised the issue, we note that Arnold's complaint, filed in November 1991, challenges the definition of "surviving spouse" contained in the version of RCW 41.26.030(6) that was amended effective September 1991. Laws of 1991, 1st Sp. Sess., ch. 12, §§ 1, 3. Nonetheless, we conclude that Arnold's challenge is not moot.

"A case is moot if a court can no longer provide effective relief." *In re Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983).

"It is a general rule that, where only moot questions or abstract propositions are involved, . . . the appeal . . . should be dismissed." *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). An exception to this rule exists where we determine the moot issue to be of substantial or continuing public interest. *Sorenson*, at 558. The governing criteria in this determination are whether: (1) the issue presented is of a public

or private nature, (2) it is desirable to provide guidance to public officers, and (3) the issue is likely to recur. *Sorenson*, at 558.

*Harvest House Restaurant, Inc. v. Lynden*, 102 Wn.2d 369, 373, 685 P.2d 600 (1984). The issues raised in this appeal satisfy the criteria set forth in *Harvest House*.

First, Arnold's constitutional challenges are generally applicable to the amended statute. In amending the definition of "surviving spouse", the Legislature included only a very small group of former spouses; the majority of former spouses remain ineligible for death benefits. Second, this case satisfies the three requirements for the application of the public interest exception to the general rule on moot issues.

## Declaratory Relief

■ DRS, in its cross appeal, contends that this case involves "a purely hypothetical and speculative controversy", and thus does not present a justiciable controversy. To invoke a court's jurisdiction under the Uniform Declaratory Judgments Act, RCW 7.24, an action must present a justiciable controversy or contain an issue of major public importance. *Nollette v. Christianson*, 115 Wn.2d 594, 598, 800 P.2d 359 (1990). The *Nollette* court, quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973), set forth the following four tests:

> For purposes of declaratory relief, a justiciable controversy is:
>
> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Nollette*, at 599.

As we interpret the declaratory judgments act, we are mindful that the Legislature has declared it remedial in nature and subject to liberal construction and administration. RCW 7.24.120; RCW 7.24.050. We are satisfied after analyzing the facts here in light of the 4-part *Nollette* test

and this legislative declaration that the trial court did not err in finding a justiciable controversy.

■ First, there is an actual, present, and existing dispute as to Arnold's eligibility for death benefits. We recognize that Arnold, in any event, could not receive such benefits unless and until Victor predeceased her. Nonetheless, her *entitlement* to benefits presents an existing dispute between parties with genuine and opposing interests. Thus, the second *Nollette* test is also satisfied.

■ Third, *Nollette* asks whether the controversy involves an interest that is direct and substantial. Arnold has a direct interest in determining the extent of assets potentially available to her in order to plan for her economic future. She also has an interest in the uninterrupted receipt of funds upon Victor's death. We can take judicial notice of the fact that the period of time from filing a complaint in superior court to the filing of an appellate court mandate averages from 3 to 5 years. ER 201. If Arnold were required to wait until Victor's death to litigate her claim, any benefits she might be entitled to receive likely would be denied her while her claim worked its way through the court system.

■ Fourth, *Nollette* looks to the nature of the relief a court can provide. Here, it is possible to enter a decision that is final and determinative regarding the constitutionality of the legislative scheme. We conclude that this case presents both a justiciable controversy and issues of public importance. Thus, the trial court did not err in denying the DRS motion to dismiss.

## Judicial Notice

Arnold asserts that the trial court erred when it refused to take judicial notice of the imbalance between male and female membership in LEOFF, and when it refused to consider the statistical data accompanying her motion for reconsideration. She contends that evidence of the disparity in LEOFF membership necessarily leads to the conclusion that RCW 41.26.030(6) and RCW 41.26.160 violate Washington's Equal Rights Amendment.

Evidence Rule 201 permits a court to exercise its discretion to take judicial notice whether requested or not, ER 201(c), and also provides for mandatory judicial notice "if requested by a party and [the court is] supplied with the necessary information." ER 201(d). We find no basis to conclude that the trial court abused its discretion. Further, Arnold was not entitled to mandatory judicial notice of the alleged imbalance of LEOFF membership.

When Arnold first requested that the trial court consider the alleged membership imbalance during the summary judgment proceedings, she did not provide statistical data. We cannot say that the LEOFF membership statistics were "generally known within the territorial jurisdiction of the trial court", ER 201(b)(1), or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201(b)(2). Arnold later obtained the information by requesting production of a statistical breakdown from DRS.

■ The data Arnold ultimately presented with her motion for reconsideration — the numbers of male and female LEOFF members as of December 1990 — was neither timely nor particularly relevant. Arnold failed to meet the standards for reconsideration or relief from judgment. She did not show that she exercised "reasonable diligence", CR 59(a)(4), to obtain this information before summary judgment, or "due diligence", CR 60(b)(3), to obtain this information in time to move for a new hearing. She also failed to show that her lack of diligence was due to "excusable neglect", CR 60(b)(1).

Further, as the trial court noted, and as we discuss below, evidence of the composition of the LEOFF membership is not dispositive of the issue before us. Even if it were error to exclude Arnold's statistical evidence, it would be harmless error.

## Equal Rights Amendment

Arnold claims RCW 41.26.030(6) and RCW 41.26.160 violate Washington's Equal Rights Amendment (ERA). While acknowledging that the statutes are facially neutral, she

contends that they have a disparate impact upon women and, thus, deny women the equal protection of the law.

The ERA, Const. art. 31, § 1 (amend. 61), provides: "Equality of rights and responsibility under the law shall not be denied or abridged on account of sex." The ERA's protection goes beyond that of the equal protection clause of the federal constitution and the privileges and immunities clause of the state constitution. *State v. Brayman*, 110 Wn.2d 183, 200-01, 751 P.2d 294 (1988). *Darrin v. Gould*, 85 Wn.2d 859, 871, 540 P.2d 882 (1975). If equal treatment is restricted or denied on the basis of sex, the classification is discriminatory and, thus, violative of the Washington Constitution. *Marchioro v. Chaney*, 90 Wn.2d 298, 305, 582 P.2d 487 (1978), *aff'd*, 442 U.S. 191, 60 L. Ed. 2d 816, 99 S. Ct. 2243 (1979). "The ERA absolutely prohibits discrimination on the basis of sex and is not subject to even the narrow exceptions permitted under traditional 'strict scrutiny' ". *Southwest Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce Cy.*, 100 Wn.2d 109, 127, 667 P.2d 1092 (1983).

■ Use of the term "disparate impact" in the case at hand is misleading. First, women clearly are not being disproportionately excluded to the *advantage of men*. Second, if, as Arnold contends, the spouses of LEOFF members are predominantly female, women would be affected by both the advantageous and the disadvantageous impacts of the statutory distribution scheme more than men. Not only would more women than men be ineligible for spousal benefits, but also more women than men would be eligible for spousal benefits. We conclude that the statute does not treat women differently than men; rather it treats one class of women differently than another class of women. Thus, the trial court did not err in failing to find a violation of the ERA.

## Equal Protection

Arnold argues that the combined application of RCW 41.26.030(6) and RCW 41.26.160 violates the guaranties of equal protection contained in the Washington State Constitution, article 1, section 12, and in the Fourteenth Amend-

ment to the federal constitution.[2] DRS contends that the statute serves the legitimate governmental purposes of providing death benefits to dependents of LEOFF members and protecting the solvency of the LEOFF fund.

■ The constitutional guaranty of equal protection requires the government to treat similarly people comparably situated with respect to the legitimate purpose of the law. *State v. Rice*, 120 Wn.2d 549, 571, 844 P.2d 416 (1993). We are not persuaded, however, by Arnold's arguments that this statute impacts a constitutionally protected suspect class and fundamental rights. Arnold cites no authority for the statement that divorced spouses are a suspect class. Her contention that the statute somehow interferes with a fundamental right to divorce also lacks support. "A statute that does not affect fundamental rights or create a suspect classification is subject to minimal judicial scrutiny under the rational basis test." *State v. Ward*, 123 Wn.2d 488, 516, 869 P.2d 1062 (1994). Thus, we examine the statute here under the rational basis test. *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992).

■ Under the rational basis test there must be a legitimate state objective supporting a statutory classification, and the law must not be wholly irrelevant to achieving that objective. *Coria*, at 169. "The rational basis test requires only that the statute's means is rationally related to its goal, not that the means is the best way of achieving that goal." *Coria*, at 173.

Where the challenged law relates to a state-administered finite fund, "a statutory discrimination will not be set aside if any state of facts can reasonably be conceived to justify it." *Automobile Drivers & Demonstrators Union Local 882 v. Department of Retirement Sys.*, 92 Wn.2d 415, 423, 598 P.2d 379 (1979), *appeal dismissed, cert. denied*, 444 U.S. 1040, 62 L. Ed. 2d 726, 100 S. Ct. 724 (1980).

A legislative distinction will withstand a minimum scrutiny analysis if, first, all members of the class are treated alike;

---

[2]Arnold does not argue that the state constitution should be construed to grant broader rights than the federal constitution, or analyze the state guaranty of equal protection under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Thus we do not separately consider the state claim.

second, there is a rational basis for treating differently those within and without the class; and third, the classification is rationally related to the purpose of the legislation.

*O'Hartigan v. Department of Personnel*, 118 Wn.2d 111, 122, 821 P.2d 44 (1991).

Under this standard of review, "a presumption of constitutionality exists for the statute in question." *O'Hartigan*, at 122. "The burden is on the party challenging the classification to show that it is 'purely arbitrary'.", *Coria*, at 172 (quoting *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 431, 799 P.2d 235 (1990)), and to prove, beyond a reasonable doubt, that it is unconstitutional. *Forbes v. Seattle*, 113 Wn.2d 929, 941, 785 P.2d 431 (1990).

Arnold failed to satisfy this demanding burden of proof. DRS provided a rational reason for treating current spouses and former spouses differently: to protect the limited LEOFF fund for the benefit of the deceased members' then current dependents. The method set forth in the statute for accomplishing this goal — denying former spouses survivor benefits — is rationally related to this purpose. The trial court did not err in rejecting Arnold's equal protection challenge to RCW 41.26.030(6) and RCW 41.26.160.

## DUE PROCESS

Finally, Arnold claims that the application of RCW 41.26.030(6) and RCW 41.26.160 violates her state and federal constitutional rights to due process of law.[3] In reviewing this claim, we first consider whether a former spouse has a legitimate property right or claim of entitlement to LEOFF death benefits. *Conard v. UW*, 119 Wn.2d 519, 528-29, 834 P.2d 17 (1992), *cert. denied*, 510 U.S. 827, 126 L. Ed. 2d 59, 114 S. Ct. 91 (1993). We will then consider whether the statute deprives the former spouse of that property right without due process.

A former spouse has a legitimate claim of entitlement to a LEOFF member's death benefits to the extent that the

---

[3]Const. art. 1, § 3; U.S. Const. amend. 14. Arnold does not argue that the state constitution should be construed to grant broader rights than the federal constitution.

former spouse can trace those benefits to his or her community property contribution. For example, during the years of the Arnold marriage, a portion of Victor Arnold's wages were paid into the Law Enforcement Officers' and Fire Fighters' Retirement System. These contributions and the corresponding contributions made by the State "purchased" the disability and death benefits.

Property acquired during marriage by either husband or wife, except that property acquired by gift, bequest, devise, or descent, and the rents, issues, and profits thereof, is presumed to be community property. RCW 26.16.030; RCW 26.16.010; RCW 26.16.020. *In re Marriage of Olivares*, 69 Wn. App. 324, 331-32, 848 P.2d 1281, *review denied*, 122 Wn.2d 1009 (1993). Community property includes wages earned by either spouse. *In re Marriage of Hurd*, 69 Wn. App. 38, 45, 848 P.2d 185, *review denied*, 122 Wn.2d 1020 (1993). In determining the status of property, we look to whether it was acquired with community or separate funds. *In re Dougherty*, 27 Wn.2d 11, 18, 176 P.2d 335 (1947). Where, and to the extent, community property is used to fund the LEOFF benefit, whether it be for the disabled member *or* for survivors following the member's death, the benefit itself is community property.

DRS claims that death benefits are distinguishable from disability benefits in that they "are an independent benefit created by the Legislature for dependents of deceased LEOFF members". While DRS accurately points out that "[t]hese statutes do not create any right on the part of a former spouse to receive death benefits . . .", this argument begs the question of whether there are other statutes that create such a right. We conclude that Plaintiff has an interest in Victor Arnold's death benefits based on the application of community property laws.

 "Where any 'significant property interest' is at stake the safeguards of procedural due process are applicable." *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 428, 511 P.2d 1002 (1973). Procedural due process prevents the government from taking a person's property or liberty without providing that party notice and an

opportunity to be heard. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 224, 829 P.2d 1099 (1992). Here, the death benefit statute deprives Arnold of a portion of her community contribution to the LEOFF fund without prior notice or opportunity to challenge the deprivation.

We reject DRS's contention that Arnold's notice of the existence of the statute and her opportunity to bring this case satisfy procedural due process requirements. *Cuddy v. Department of Pub. Assistance*, 74 Wn.2d 17, 442 P.2d 617 (1968), cited by DRS, provides:

> The constitutional elements of procedural due process, and thus of a fair hearing, are: notice; an opportunity to be heard or defend before a competent tribunal in an orderly proceeding adapted to the nature of the case; an opportunity to know the claims of opposing parties and to meet them; and a reasonable time for preparation of one's case.

*Cuddy*, at 19. The *Cuddy* court decided that the administrative hearing at issue there satisfied due process requirements. *Cuddy* does not suggest that notice of the mere existence of a statute, and the opportunity to challenge the statute in a declaratory judgment action, are sufficient procedural due process protections. We are not persuaded that mere notice of the existence of a statute is sufficient to satisfy due process. We hold, therefore, that RCW 41.26.160(1) and (2) and RCW 41.26.030(6), insofar as they operate to deprive former spouses of their half of community contributions to the LEOFF fund without notice and a prior hearing, violate constitutional rights to procedural due process.

To show a denial of substantive due process, the claimant must show conduct that is arbitrary and unreasonable. *Grader v. Lynnwood*, 53 Wn. App. 431, 439, 767 P.2d 952, *review denied*, 113 Wn.2d 1001, *cert. denied*, 493 U.S. 894, 107 L. Ed. 2d 193, 110 S. Ct. 243 (1989). Due process is satisfied so long as there is a rational basis for the statutory classifications and those belonging to the same class are treated alike. *Berland v. Employment Sec. Dep't*, 52 Wn. App. 401, 409, 760 P.2d 959 (1988). The analysis here is essentially the same as that set forth above regarding Arnold's equal protection

challenge. The statutory classifications are rational in light of the legislative purpose of providing benefits for dependents of deceased LEOFF members and maintaining a fiscally sound benefit system.

In summary, we reject Arnold's claims that the challenged statutes violate the Equal Rights Amendment or constitutional guaranties of equal protection or substantive due process. We further determine that Arnold does not have a property interest in benefits attributable to DRS's contributions to the LEOFF fund. However, we agree that RCW 41.26.160(1) and (2) and RCW 41.26.030(6), as applied here, unconstitutionally deprive Arnold of her interest in death benefits without the procedural due process required by article 1, section 3 of the Washington State Constitution, and the fourteenth amendment to the United States Constitution.

We reverse the trial court's decision granting summary judgment to DRS and denying summary judgment to Arnold.

ALEXANDER and HOUGHTON, JJ., concur.

Reconsideration denied September 9, 1994.

Review granted at 126 Wn. 2d 1001 (1995).