116 P.3d 1081 (2005)
CLIENT A, Client B and P.T., Ph.D., Appellants,
v.
Jeffrey YOSHINAKA, in his official capacity as an investigator for the Washington State Examining Board of Psychology ("Board"); Mary Selecky, in her capacity as Secretary of Health of Washington State; Washington State Department of Health; the Washington State Examining Board of Psychology; Hon. Christine O. Gregoire, Attorney General of the State of Washington; The State of Washington; Gloria Rose Koepping, in her capacity as Chairman and Member of the Board; Dean Funibiki, in his capacity as Vice-Chairman and Member of the Board; and Patricia Hanson; Ray Harry; Joanne Ito; Juan/ John Ramirez; Lisa Richesson; Elizabeth Robinson; and Doug Uhl, in their capacities as members of the Board, Respondents.
No. 54291-5-I.
Court of Appeals of Washington, Division One.
August 8, 2005.
*1082 William R. Bishin, Law Offices of William Bishin, Seattle, WA, for Appellant.
Pamela H. Anderson, Melissa A. Burke-Cain, Office of Atty General, Olympia, WA, for Respondents.
AGID, J.
¶ 1 On behalf of Washington's Examining Board of Psychology, the state Department of Health initiated an investigation against psychologist Dr. T after receiving a complaint from the mother of one of Dr. T's clients. To further its investigation, the Department requested Dr. T's treatment records for the complainant's son and her son's wife, asserting that Washington's Uniform Health Care Information Act and Uniform Disciplinary Act authorized it to obtain the records. Dr. T and the complainant's son and daughter-in-law refused to provide the requested records. They sued the State for declaratory and injunctive relief, alleging that the statutes authorizing the request violate their constitutional rights to privacy, free speech, and free association, and permit an unreasonable search and seizure. The trial court disagreed and dismissed the case on summary judgment. We conclude that we should not address the statutes' constitutionality because we can resolve the case on statutory grounds. The Department violated the Uniform Disciplinary Act by investigating the complaint without a Board determination of merit. We reverse and remand for the trial court to determine the amount of plaintiffs' attorney fee award.

FACTS
¶ 2 On June 21, 2002, Washington's Department of Health (Department) received a letter complaining about the professional practices of Dr. T, a psychologist who specializes in group couples' counseling and who was treating the complainant's son (Client A) and her son's wife (Client B) in marital therapy. According to the complaint, Dr. T advised Clients A and B to sever all contacts between them and their families in order to improve their own relationship. As a result, Clients A and B have not communicated with their families for over one year. The complainant expressed concern that Clients A and B were somehow involved in a "`cult situation,'" and requested an investigation of Dr. T's professional practices and record to determine whether he was a legitimate advisor. Several months earlier, in February 2002, the Department had received a similar complaint against Dr. T from a former patient. That complaint was referred for investigation in March.
*1083 ¶ 3 In July 2002, the Department notified Dr. T of the June complaint and referred the complaint to Jeffrey Yoshinaka, a Department investigator. Several weeks later, Yoshinaka interviewed the complainant by phone. On August 14, 2002, Yoshinaka mailed a letter of cooperation to Dr. T, notifying him of the complaint, providing a copy of the complaint letter, and advising Dr. T that no formal charges had been issued against him and that no determination about whether further action was warranted would be made until the initial investigation was completed. The letter also asked Dr. T to provide a written explanation of the complaint's allegations, as well as "individual and group treatment records, account history, and any other documents" he believed to be pertinent. Yoshinaka cited, as authority for the request, RCW 18.130.050(2), RCW 18.130.180(8), and RCW 70.02.050(2)(a). These statutes, respectively, empower the government to investigate complaints of unprofessional conduct by health professionals, obligate the professional to cooperate in the investigation, and require the professional to disclose health care information despite a lack of patient consent.
¶ 4 One week after sending the letter of cooperation, Yoshinaka received a telephone call from Dr. T's attorney, William Bishin, as well as letters from Clients A and B, indicating that the clients opposed disclosing their treatment records. Yoshinaka suggested to Bishin that Dr. T "request his clients to submit a letter re: the complaint, thereby allowing them [to] disclose what they feel comfortable with, and [Dr. T] address their treatment in general, and the underlying theory and principles of his practice." On September 14, 2002, Yoshinaka received a letter from Bishin, wherein Bishin requested more time to respond to the letter of cooperation and asked for some indication of probable cause to justify the Department's request for the clients' records. One week later, Yoshinaka received another letter from Bishin. This one stated that Dr. T would provide general information about his practices, but that he would not disclose Clients A and B's treatment records. Bishin also told Yoshinaka that the investigation was interfering with the clients' ongoing therapeutic relationship with Dr. T.
¶ 5 On October 1, 2002, Yoshinaka responded, stating that he had consulted with the Department's staff attorney and that he was renewing his request for the clients' treatment records. He advised Bishin that Dr. T's failure to comply with the request could result in unprofessional conduct charges. He further stated:
The purpose of my request for a detailed response and the treatment records is to provide the Examining Board of Psychology with sufficient information to make a determination regarding the disposition of the complaint. The department recognizes the confidentiality of the documents requested is of paramount importance, and maintains such records in strict accordance with RCW 70.02.020, Disclosure By Health Care Provider.
Two weeks later, on October 15, 2002, Yoshinaka received a letter from Bishin that outlined the general nature of Dr. T's practice and his professional reasons for occasionally recommending that clients temporarily cease familial communication. The letter also stated that at the beginning of their work with Dr. T, Clients A and B signed written acknowledgements that they did not want Dr. T to keep any treatment records, so there were no treatment records for them. Bishin asserted that Dr. T had therefore fully complied with Yoshinaka's request for information.
¶ 6 On November 25, 2002, Yoshinaka submitted his investigation report to the state Examining Board of Psychology (Board). A Board panel recommended additional investigation for both the February and June complaints, and in April 2003, the Department's supervising investigator sent Dr. T a second letter of cooperation. That letter did not ask for any client records, but instead asked about Dr. T's education and training, the sources supporting Dr. T's theories, what portion of clients request that no records be kept, and what portion of clients are advised to sever family contact. On June 19, 2003, the additional investigation was completed. In November of that year, the Board panel closed both complaints, and one month later, it advised Dr. T that no violation had been *1084 found. It also advised Dr. T that the Board could later reconsider the complaint if it received additional information. Dr. T's professional license expired in October 2004, and he has not renewed it.
¶ 7 On October 16, 2002, one day after Yoshinaka received Dr. T's final response to the letter of cooperation and approximately one year before the Board dismissed the complaints, Dr. T and Clients A and B (collectively Dr. T) filed this lawsuit against Yoshinaka, the Department of Health and its Secretary, and the Examining Board of Psychology and its chairpersons and members (collectively the State).[1] They sued for declaratory and injunctive relief under 42 U.S.C. § 1983, and alleged that the State's demand for information constituted an unreasonable search and seizure, and violated their constitutional rights to privacy, freedom of expression, and freedom of association. Both parties moved for summary judgment, and the State prevailed. Dr. T appeals.

DISCUSSION
¶ 8 In reviewing a trial court's decision to grant summary judgment, we consider all facts and reasonable inferences in the light most favorable to the nonmoving party.[2] Absent a genuine issue of any material fact, the moving party is entitled to summary judgment as a matter of law.[3] This case raises questions of law, which we review de novo.[4]
¶ 9 In Washington, psychologists are regulated by the Department of Health.[5] Anyone who represents himself or herself as a psychologist must first obtain a license[6] by fulfilling examination and education requirements.[7] While the Department issues the licenses,[8] the Examining Board of Psychology is charged with examining the qualifications of licensing applicants[9] and with taking disciplinary action against psychologists for unprofessional conduct.[10] This disciplinary action is provided for by the Uniform Disciplinary Act (UDA).[11] Although the Board has the authority to enforce the UDA as it pertains to psychologists,[12] the Department provides assistance by employing investigative, administrative, and clerical staff to enforce the statute.[13] The Department also develops procedural rules to be used when regulating health professionals.[14]
¶ 10 Anyone may submit to the Board a written complaint charging a psychologist with unprofessional conduct.[15] A Board panel may then conduct an investigation if it decides that the complaint merits it.[16] If, after investigation, the Board panel determines that there is reason to believe the psychologist has acted unprofessionally, it must prepare a statement of charges, and the psychologist may request a hearing.[17] If the Board panel ultimately finds unprofessional conduct, it may order sanctions.[18]
¶ 11 While investigating a complaint of unprofessional conduct, the Board may access information about the health professional's patients. Under the Uniform Health Care *1085 Information Act,[19] a health care provider may not disclose health care information about a patient without the patient's authorization.[20] But under RCW 70.02.050(2)(a), a health care provider must disclose a patient's health care information without the patient's authorization if the disclosure is to federal, state, or local public health authorities and is necessary to determine compliance with state or federal licensure laws or to protect the public health. And under the UDA, specifically RCW 18.130.180(8), failure to cooperate with the disciplining authority by refusing to furnish requested patient information constitutes unprofessional conduct that may be sanctioned. It is under these laws that Yoshinaka requested the treatment records of Clients A and B from Dr. T. Washington courts have never addressed these statutes' constitutionality.

I. Mootness

¶ 12 As a preliminary matter, the State argues that this case is moot because Dr. T kept no treatment records for Clients A and B, the Board closed the investigation without receiving any records, Dr. T is not the subject of any pending investigation or disciplinary proceeding, and Dr. T's license has expired and he has not attempted to renew it. A case is moot if a court could no longer provide effective relief,[21] and courts should normally dismiss cases that involve only moot questions.[22]
¶ 13 We agree that this case is moot, as a court could not now provide effective injunctive or declaratory[23] relief to Dr. T. But we will nevertheless review the case because it presents issues that are of a substantial and continuing public interest.[24] To determine whether a moot question qualifies as a reviewable public interest, the court should consider whether the issue is of a public or private nature, it is desirable to provide guidance to public officers, and the issue is likely to recur.[25] This case involves competing public interests: the interest in health care privacy versus the interest in ensuring that health professionals are regulated to protect public health. Second, State investigators should understand the boundaries that limit their investigatory power. And third, the issue is likely to recur, as complaints against health professionals and investigators' attempts to access patient records are inevitable. We will also review this case because it involves a matter that is capable of repetition but evades review.[26] That is, the challenged action began and ended before the parties could obtain relief, and there is a reasonable expectation that patients and their doctors will be subjected to the same action in the future.[27]

II. Violation of Statutory Procedures

¶ 14 Although Dr. T focused his briefing on his constitutional challenges to *1086 RCW 18.130.180(8) and RCW 70.02.050(2)(a), we do not need to reach those issues[28] because we conclude that the Department violated governing statutory procedures set forth by the UDA.[29] The UDA empowers the Board to investigate allegations of unprofessional conduct against psychologists.[30] If the Board receives a complaint against a psychologist, it may investigate that complaint if it "determines that the complaint merits investigation [.]"[31] In other words, an investigation against a psychologist may not proceed until the Board reviews the complaint and determines that there are reasonable grounds to believe unprofessional conduct occurred.[32] While it is true that the statute authorizes Department employees to assist the Board in conducting investigations,[33] nowhere does it authorize Department employees to initiate an investigation unless the Board first makes a determination of merit and directs the Department to investigate.
¶ 15 In this case, Department employees initiated the investigation against Dr. T without first submitting the complaint to the Board and obtaining a Board merit determination. Rather than seek a determination, from trained professionals, that the complaint merited investigation, the Department demanded access to medical records in clear violation of the statute. The fact that the Board dismissed the case against Dr. T after conducting its own, less-intrusive investigation illustrates the problems with allowing Department employees unfettered access to medical records without the Board first making a determination that the complaint has merit.
¶ 16 The State argues that the Board orally delegated to the Department permission to initiate certain investigations without first obtaining the Board's authorization. But this oral delegation of statutory power is insufficient. The Board has the authority to adopt rules as necessary,[34] and it should engage in procedurally-appropriate rulemaking if it wishes to delegate authority to the Department. In doing so, the Board must balance the substantial privacy and confidentiality interests of health professionals and their patients with the State's significant interest in protecting the public health. Any procedure must also provide health professionals and patients the ability to challenge specific document requests made by the State.
¶ 17 We recognize that there may be complaints involving real danger to the public in which the State must have the ability to access information expeditiously. The procedural safeguards provided by the UDA, when properly followed, strike an appropriate balance between adequately allowing the State to obtain pertinent records while preventing it from having unfettered access. First, an investigation should not be conducted, and records should not be obtained, until the Board determines that the complaint merits investigation. And second, the Board has the authority to issue subpoenas[35] and take depositions[36] once it determines that there are reasonable grounds to believe that unprofessional conduct occurred. By obtaining information through those procedural means, the Board provides the responding party the opportunity to challenge the discovery in court.[37]
¶ 18 By demanding mental health records without following the statutory safeguards, the State violated the UDA. We therefore *1087 reverse and remand this case for an attorney fee award in Dr. T's favor.[38]
WE CONCUR: BAKER and COLEMAN, JJ.
NOTES
[1] Because of this lawsuit, the Board assigned pro tem members to handle the complaints against Dr. T.
[2] Mason v. Kenyon Zero Storage, 71 Wash.App. 5, 8-9, 856 P.2d 410 (1993).
[3] Condor Enters., Inc. v. Boise Cascade Corp., 71 Wash.App. 48, 54, 856 P.2d 713 (1993) (citing CR 56(c); Marincovich v. Tarabochia, 114 Wash.2d 271, 274, 787 P.2d 562 (1990)).
[4] Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993).
[5] RCW 18.120.020(4); 18.122.
[6] RCW 18.83.020(1).
[7] RCW 18.122.030(1)(c).
[8] RCW 18.83.080.
[9] RCW 18.83.035.
[10] RCW 18.83.121; 18.130.160.
[11] RCW 18.130. See also RCW 18.83.054 (psychologists are subject to the UDA).
[12] RCW 18.130.040(2)(b)(xiii), 18.130.050.
[13] RCW 18.130.060(1).
[14] RCW 18.130.095.
[15] RCW 18.130.080.
[16] RCW 18.130.080.
[17] RCW 18.130.090(1).
[18] RCW 18.130.160.
[19] RCW 70.02.
[20] RCW 70.02.020.
[21] Arnold v. Dep't of Retirement Sys., 74 Wash.App. 654, 659, 875 P.2d 665 (1994) (citing In re Cross, 99 Wash.2d 373, 376-77, 662 P.2d 828 (1983)), rev'd on other grounds, 128 Wash.2d 765, 912 P.2d 463 (1996).
[22] Id. (citing Harvest House Restaurant, Inc. v. City of Lynden, 102 Wash.2d 369, 373, 685 P.2d 600 (1984)).
[23] See Biggers v. City of Bainbridge Island, 124 Wash.App. 858, 863, 103 P.3d 244 (2004) (citing Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wash.2d 791, 802, 83 P.3d 419 (2004); Superior Asphalt & Concrete Co. v. Wash. Dep't of Labor & Indus., 121 Wash.App. 601, 605-06, 89 P.3d 316 (2004), review denied, 153 Wash.2d 1005, 103 P.3d 1248 (2005)) (a plaintiff is not entitled to declaratory relief if he or she is unable to allege a justifiable controversy based on allegations of substantial, rather than speculative, personal harm).
[24] Arnold, 74 Wash.App. at 659, 875 P.2d 665 (citing Harvest House Restaurant, 102 Wash.2d at 373, 685 P.2d 600) (courts should consider moot questions if they are of substantial or continuing public interest).
[25] Id. at 659-60, 685 P.2d 600 (citing Harvest House Restaurant, 102 Wash.2d at 373, 685 P.2d 600).
[26] In re Marriage of Horner, 151 Wash.2d 884, 893 n. 8, 93 P.3d 124 (2004) (citing Weinstein v. Bradford, 423 U.S. 147, 148-49, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)) (a court reviews moot cases where the matter is capable of repetition but evades review).
[27] Id. (citing Weinstein, 423 U.S. at 148-49, 96 S.Ct. 347).
[28] "[I]t is a well-established rule of judicial restraint that the issue of the constitutionality of a statute will not be passed upon if the case can be decided without reaching that issue." State v. Rodgers, 146 Wash.2d 55, 60, 43 P.3d 1 (2002) (citing State v. Peterson, 133 Wash.2d 885, 894, 948 P.2d 381 (1997) (Talmadge, J., concurring)).
[29] And failure to comply with the UDA's statutory protections raises serious unreasonable search and seizure issues under both the United States and Washington Constitutions.
[30] See RCW 18.130.040(2)(b)(xiii); 18.130.080.
[31] RCW 18.130.080 (emphasis added).
[32] RCW 18.130.080.
[33] RCW 18.130.060(1).
[34] RCW 18.130.050(1).
[35] RCW 18.130.050(3).
[36] RCW 18.130.050(4).
[37] See CR 26(c) (a party from whom discovery is sought may seek a protective order in court).
[38] On remand, the trial court should determine an appropriate fee award based on the rules set forth in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); Kastanis v. Educ. Employees Credit Union, 122 Wash.2d 483, 859 P.2d 26 (1993), opinion amended, 122 Wash.2d 483, 865 P.2d 507 (1994); Nordstrom, Inc. v. Tampourlos, 107 Wash.2d 735, 733 P.2d 208 (1987); and Blair v. Wash. State Univ., 108 Wash.2d 558, 740 P.2d 1379 (1987).

We reject Dr. T's challenge to the trial court's decision to dismiss the Department, Board, Attorney General, and Secretary of Health as defendants. Section 1983 suits may not be brought in state court against the state or against a state official acting in his or her official capacity because a state is not a "person" subject to suit under Section 1983. Wash. State Republican Party v. Wash. State Pub. Disclosure Comm'n, 141 Wash.2d 245, 285-86, 4 P.3d 808 (2000) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66-67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). It is true that this rule does not apply in suits for injunctive relief, id. at n. 17 (citing Will, 491 U.S. at 71 n. 10, 109 S.Ct. 2304), but no records exist for Clients A and B and thus no injunctive relief could be granted in this case. Dr. T also challenges the court's dismissal of Joanne Ito, a former Board member. But this was not error because Ito is no longer active on the Board.