[No. 61494-1-I.   Division One.   September 8, 2009.]

DOUGLAS A. SEYMOUR, *Appellant*, v. THE DEPARTMENT OF HEALTH, DENTAL QUALITY ASSURANCE COMMISSION, *Respondent*.

*Philip A. Talmadge* and *Sidney C. Tribe* (of *Talmadge/ Fitzpatrick, PLLC*); and *John C. Versnel III* and *Vanessa M. Vanderbrug* (of *Lawrence & Versnel, PLLC*), for appellant.

*Robert M. McKenna, Attorney General*, and *Cindy Gideon, Assistant*, for respondent.

¶1 DWYER, J. — Today we decide whether a warrantless administrative inspection of a dentist's office not authorized by statute violates the Fourth Amendment's prohibition against unreasonable searches. We conclude that it does and, accordingly, reverse.

I

¶2 A warrantless administrative search is valid only if authorized by a statute that adequately serves as a substitute for the protection afforded by the Fourth Amendment's warrant requirement. Pursuant to Washington's Uniform Disciplinary Act (UDA), chapter 18.130 RCW, before a professional disciplining authority such as the Dental Quality Assurance Commission (DQAC) may direct the Department of Health (DOH) to investigate a complaint of unprofessional misconduct against a licensed health care professional, the disciplining authority must first determine that the complaint has merit. *See* RCW 18.130.080(2). That was not done here.

¶3 After receiving complaints of unprofessional conduct against Douglas A. Seymour, DDS, DOH commenced an investigation into Dr. Seymour's dental practice that in-

cluded a warrantless inspection of his office, during which an investigator seized various documents and collected other evidence, without any determination from DQAC as to the complaints' merit. Subsequently, additional evidence was obtained as the result of the investigator's demands of Dr. Seymour that he produce copies of various business records. Evidence obtained during this investigation subsequently formed much of the basis for DQAC's adjudicative findings that Dr. Seymour had engaged in unprofessional conduct, the imposition of a fine against Dr. Seymour, and the revocation of his license to practice dentistry. However, as neither the initial search nor the subsequent seizure of records were authorized by statute, the investigator acted in violation of Dr. Seymour's rights under the Fourth Amendment. Therefore, pursuant to the provisions of the Administrative Procedure Act (APA), chapter 34.05 RCW, the presiding officer at Dr. Seymour's disciplinary hearing should have granted Dr. Seymour's motion to exclude that evidence unlawfully obtained pursuant to the search and seizures.[1] Due to the rulings made at the hearing, it is not possible to determine on appeal precisely which evidence introduced at Dr. Seymour's hearing should have been excluded. Likewise, it is impossible to determine whether DQAC's findings and conclusions are supported by substantial evidence or whether the sanctions imposed against Dr. Seymour are just. Thus, we vacate DQAC's disciplinary order and remand this matter to the commission for further proceedings.

## II

¶4 Pursuant to the UDA, DQAC has the authority to investigate complaints of unprofessional conduct against licensed dentists, prepare a statement of formal charges,

---

[1] The APA governs adjudicative proceedings held pursuant to the UDA. RCW 18.130.100. The APA provides that "[t]he presiding officer [of a disciplinary hearing] shall exclude evidence that is excludable on constitutional or statutory grounds." RCW 34.05.452(1).

conduct administrative disciplinary hearings, and impose sanctions. *See* RCW 18.130.040(2)(b)(iii), .050, .090(1), .160. RCW 18.130.080(2) sets forth the procedure that DQAC, as a disciplining authority, must follow in deciding whether to investigate a complaint of unprofessional conduct: "If the disciplining authority determines that a complaint . . . merits investigation, . . . the disciplining authority shall investigate to determine whether there has been unprofessional conduct."[2] This provision of the UDA prohibits the investigation of a licensed health care professional from "proceed[ing] until the [disciplining authority] reviews the complaint and determines that there are reasonable grounds to believe unprofessional conduct occurred." *Client A v. Yoshinaka*, 128 Wn. App. 833, 843, 116 P.3d 1081 (2005).[3]

¶5 In March 2002, two individuals formerly employed in Dr. Seymour's dental office filed complaints of unprofessional conduct against him. The complaints alleged that Dr. Seymour and his office manager had engaged in fraudulent billing practices and that Dr. Seymour had provided substandard dental care to some of his patients. Pursuant to an internal DQAC policy memorandum directing DOH investigative staff to automatically investigate certain categories of complaints, including fraud and substandard dental care, DOH commenced an investigation into Dr. Seymour's dental practice. It is undisputed that neither the full commission nor a panel thereof evaluated the merit of these particular complaints against Dr. Seymour before the investigation began.

---

[2] To perform its duties under the UDA, DQAC may establish a panel consisting of three or more commission members. RCW 18.130.050(18). It may transact business through such a panel by majority vote. RCW 18.32.0357. Further, DQAC may appoint one of its individual members to "direct investigations" into unprofessional conduct complaints, RCW 18.130.050(11), and it may utilize DOH employees to conduct investigations. RCW 18.130.060(4).

[3] *Yoshinaka* involved an investigation into a complaint of unprofessional conduct against a psychologist. Our analysis, however, was not limited to the UDA's application to investigations concerning psychologists. RCW 18.130.080(2) applies to all disciplining authorities charged with assuring "the public of the adequacy of professional competence and conduct in the healing arts." RCW 18.130.010.

¶6 In July, a DOH investigator entered Dr. Seymour's dental office and requested the production of records for 40 patients. Dr. Seymour complied with the investigator's request and directed his office manager to make copies of the available records. The office manager produced half of the requested documents at that time; the other requested documents were not stored at the office. While waiting for the office manager to copy the requested records, the investigator observed a note behind the front desk indicating that all tooth extractions on adults should be billed as surgical procedures, which the investigator believed to be evidence of improper billing conduct.

¶7 In early August, the investigator presented her findings to a member of DQAC, Dr. Lorin Peterson, who served as the "Reviewing Commission Member" for this investigation. In September, a third former employee made allegations similar to those contained in the first two complaints. Later that fall, Dr. Seymour provided the remaining patient records requested by the DOH investigator during the inspection; that winter, he provided additional records in response to an investigative request. In January 2003, a patient of Dr. Seymour's filed a complaint alleging that Dr. Seymour had provided him with substandard dental care.

¶8 In April 2003, upon Dr. Peterson's recommendation, DQAC authorized the filing of a formal statement of charges against Dr. Seymour alleging inferior dental work, fraudulent billing, and mismanagement of patient accounts. It is undisputed that neither the full commission nor a panel thereof had reviewed the complaints against Dr. Seymour prior to this time. In December 2003, DQAC authorized the filing of an additional charge of unprofessional conduct against Dr. Seymour, arising out of the complaint filed by Dr. Seymour's former patient.

¶9 On July 31, 2006, DQAC commenced an adjudicatory hearing on the charges against Dr. Seymour. A health law judge presided over the hearing, and a separate three-member panel comprised of DQAC members received evidence. Much of the evidence introduced at the hearing

consisted of materials seized from Dr. Seymour's office pursuant to the warrantless July 2002 inspection and observations the DOH investigator made during the inspection. Other evidence introduced was the product of additional investigative demands for records made of Dr. Seymour prior to April 2003. Dr. Seymour testified on his own behalf at the hearing, as did one of his patients whose record formed part of the evidence in support of the charge of fraud against Dr. Seymour. The panel also heard testimony from dental experts as to accepted accounting and billing practices, as well as the reasonable standard of dental care. In addition, it heard testimony from some of Dr. Seymour's former employees.

¶10 In October 2006, the panel issued findings of fact and conclusions of law. It specifically found that Dr. Seymour had provided treatment below the standard of care in 4 instances and that he had committed 11 acts of fraudulent billing. Taking into account past disciplinary actions involving Dr. Seymour, DQAC sanctioned Dr. Seymour's conduct by revoking his license and prohibiting him from owning a dental practice for seven years. It also imposed a $50,000 fine and required him to retake the credentialing exam before reapplying to practice. On appeal, the superior court affirmed DQAC's decision.

### III

¶11 Dr. Seymour contends that the DOH inspection of his office and demands for his records were made in violation of the Fourth Amendment's prohibition against warrantless searches and seizures. Therefore, he asserts, evidence gathered pursuant to this inspection and those demands should have been excluded. We agree.

¶12 It is well established that "the Fourth Amendment's prohibition against unreasonable searches applies to administrative inspections of private commercial property." *Donovan v. Dewey*, 452 U.S. 594, 598, 101 S. Ct. 2534, 69 L. Ed. 2d 262 (1981) (citing *Marshall v. Barlow's, Inc.*,

436 U.S. 307, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978); *See v. City of Seattle*, 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967)). Indeed,

> [t]he Court long has recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes. An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable. This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes.

*New York v. Burger*, 482 U.S. 691, 699-700, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987) (citations omitted).

¶13 The protections of article I, section 7 of the Washington Constitution extend to administrative searches coextensively with those of the Fourth Amendment. *Centimark Corp. v. Dep't of Labor & Indus.*, 129 Wn. App. 368, 375, 119 P.3d 865 (2005); *accord State v. Browning*, 67 Wn. App. 93, 95, 834 P.2d 84 (1992) (analyzing protections against unreasonable searches provided under both the federal and state constitutions).[4]

¶14 Notwithstanding this recognized expectation of privacy in commercial establishments, it has been made clear that "legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment." *Donovan*, 452 U.S. at 598 (citing *United States v. Biswell*, 406 U.S. 311, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972); *Colonnade Catering*

---

[4] In *Centimark*, Centimark contended that article I, section 7 provided greater protection than the Fourth Amendment in the context of an administrative search. 129 Wn. App. at 374. Centimark failed, however, to offer a complete analysis under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986), in support of its contention that these parallel provisions of the state and federal constitutions should be evaluated independently. *Centimark*, 129 Wn. App. at 375. Therefore, we viewed the two provisions as being coextensive. *Centimark*, 129 Wn. App. at 375 (citing *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 394, 20 P.3d 907 (2001)). Neither party here has offered a *Gunwall* analysis as to why article I, section 7 should be interpreted independently from the Fourth Amendment in this context. Accordingly, we continue to view the two provisions as coextensive.

*Corp. v. United States*, 397 U.S. 72, 90 S. Ct. 774, 25 L. Ed. 2d 60 (1970)). That a legislative scheme authorizing the warrantless inspection of a business may be consistent with the Fourth Amendment reflects the belief that an individual's expectation of privacy in commercial property differs from that in one's home. *Burger*, 482 U.S. at 700. As the Supreme Court explained:

> The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity afforded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections.

*Donovan*, 452 U.S. at 598-99.

¶15 Of course, not all means of conducting administrative searches satisfy the Fourth Amendment.

> [T]he Fourth Amendment protects the interest of the owner of property in being free from *unreasonable* intrusions onto his property by agents of the government. Inspections of commercial property may be unreasonable if they are not authorized by law or are unnecessary for the furtherance of [government] interests. *Colonnade Catering*[, 397 U.S. at 77]. "Where Congress has authorized inspection but made no rules governing the procedures that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." *Colonnade Catering*[, 397 U.S. at 77]. In such cases, a warrant may be necessary to protect the owner from the "unbridled discretion [of] executive and administrative officers," *Barlow's*[, 436 U.S. at 323], by assuring him that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]." *Camara* v. *Municipal Court*, 387 U.S. 523, 538[, 87 S. Ct. 1727, 18 L. Ed. 2d 930] (1967).

*Donovan*, 452 U.S. at 599 (some alterations in original).

¶16 To be valid under the Fourth Amendment, a warrantless regulatory search or administrative inspection must satisfy three criteria. *Burger*, 482 U.S. at 702. The

court in *Beck v. Texas State Board of Dental Examiners*, 204 F.3d 629, 638 (5th Cir. 2000) (citing *Burger*, 482 U.S. 691), succinctly summarized these criteria: Warrantless administrative searches are constitutional only

> (1) if there is a substantial governmental interest that informs the regulatory scheme pursuant to which the inspection is made, (2) if warrantless inspections are necessary to further the regulatory scheme, and (3) if the inspection program provides a constitutionally adequate substitute for a warrant, in terms of certainty and regularity of its application.[5]

¶17 Reining in the power of the executive branch in conducting administrative searches is a primary concern of courts reviewing such statutory schemes. Where a statutory scheme is properly formulated and followed, Fourth Amendment concerns are addressed by the elimination of unreasonable searches. In such cases, "it is difficult to see what additional protection a warrant requirement would provide. . . . The discretion of Government officials to determine what facilities to search and what violations to search for is thus directly curtailed by the regulatory scheme." *Donovan*, 452 U.S. at 605. A proper regulatory scheme, "rather than leaving the frequency and purpose of inspections to the unchecked discretion of Government officers, . . . establishes a predictable and guided . . . regulatory presence." *Donovan*, 452 U.S. at 604. Hence, the person subject to the inspection "is not left to wonder about the purposes of the inspector or the limits of his task." *Biswell*, 406 U.S. at 316. The "regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting

---

[5] Our Supreme Court has similarly recognized that, in the context of a statute authorizing warrantless inspections of massage parlors, "when an industry or business is subject to extensive governmental regulation and frequent unannounced inspections are necessary to insure compliance, warrantless inspections are valid *if authorized by a statute* which sufficiently delineates the scope, time and place of inspection." *Wash. Massage Found. v. Nelson*, 87 Wn.2d 948, 953, 558 P.2d 231 (1976) (emphasis added).

officers." *Burger*, 482 U.S. at 703 (citing *Barlow's*, 436 U.S. at 323).

¶18 Of critical importance to the validity of the warrantless inspection of Dr. Seymour's office is whether it satisfied the criterion of being authorized by a statute providing a constitutionally adequate substitute for the Fourth Amendment's warrant requirement. It did not. Although Dr. Seymour does not contend that the UDA provides inadequate statutory authorization for warrantless administrative inspections, we nonetheless conclude that the inspection herein was not made pursuant to a statutory scheme sufficiently protective of Dr. Seymour's rights because it was not made pursuant to any recognized statutory scheme at all.

¶19 Well before the commencement of the adjudicatory hearing herein, we made clear that an investigation under the UDA "may not proceed until the [disciplining authority] reviews the complaint and determines that there are reasonable grounds to believe unprofessional conduct occurred." *Yoshinaka*, 128 Wn. App. at 843. We also emphasized that the UDA does not authorize DOH employees "to initiate an investigation unless the [disciplining authority] first makes a determination of merit and directs the [DOH] to investigate." *Yoshinaka*, 128 Wn. App. at 843. Assuming that the UDA's requirements, as construed in *Yoshinaka*, are adequate substitutes for the warrant requirement,[6] the warrantless inspection herein was invalid because it was commenced before the determination of merit required by the UDA was made, indeed before the commission or a panel thereof was even aware of the complaints. Therefore, the inspection violated Dr. Seymour's rights under the Fourth Amendment.

¶20 The irregularity in this case is significant. The requirement that DQAC make a finding of merit in order to

---

[6] We emphasize that we do not reach the question of whether the scheme under the UDA is an adequate substitute for the warrant requirement. Our analysis is limited to the threshold question of whether the warrantless inspection herein was authorized by any statute.

authorize the commencement of an investigation is designed to address two significant Fourth Amendment concerns. First, the finding of merit is the statutory substitute for a judicial determination of probable cause. Second, the finding of merit defines the possible violations, thus delineating the parameters of reasonableness to be applied to searches and seizures conducted during the investigation that follows. Without such a finding, the discretion of executive branch investigative officials is unchecked.

¶21 The arguments of DOH and DQAC to the contrary are without merit. As to their first contention, that the investigation and the attendant inspection were lawful because they proceeded pursuant to DQAC's internal policy memorandum directing that certain categories of complaints must always be investigated, we rejected a similar argument in *Yoshinaka*, 128 Wn. App. at 844. As to their second argument, that DQAC's policy was a written directive as opposed to an oral one, this fact is of no significance. The UDA requires the disciplining authority to review *"the complaint,"* *Yoshinaka*, 128 Wn. App. at 843 (emphasis added); it does not permit DQAC to declare that all complaints falling within certain categories merit investigation. Moreover, as we also pointed out in *Yoshinaka*, if DQAC seeks to adopt rules delegating to DOH the authority to make merit determinations, "it should engage in procedurally-appropriate rule making."[7] 128 Wn. App. at 844.

¶22 As to their next argument, that any error was cured by the participation of the reviewing commission member, this contention is similarly without merit. The reviewing commission member's participation in the investigation is no substitute for a determination of merit by DQAC, as the UDA does not authorize a single commission member to execute the disciplining authority's statutory duties. *See* RCW 18.130.050(18). DQAC may delegate func-

---

[7] We do not assume that such rule making necessarily addresses the Fourth Amendment concerns attendant to administrative searches.

tions to a panel comprised of fewer members than the entire commission, but the panel must contain at least three members, and any panel action requires a majority vote. RCW 18.32.0357; RCW 18.130.050(18). A single member of DQAC does not constitute such a panel.

¶23 Nor are we persuaded by the averment that Dr. Seymour voluntarily consented to the inspection of his dental office and the seizure of copies of patient records, or that he subsequently voluntarily provided additional copies of patient records related to the request for production of records made during and after the warrantless inspection. We have previously applied the rule concerning consent announced in *Bumper v. North Carolina*, 391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968), in the context of an administrative search. *See Browning*, 67 Wn. App. at 97 (involving a housing inspection that uncovered evidence of a marijuana grow operation).[8] In *Bumper*, the Supreme Court held that, "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." 391 U.S. at 548-49 (footnote omitted). As explained by a leading commentator:

> But if the businessman admits the inspector only after being told that the inspector has a right to conduct a warrantless inspection, this is not consent but merely an acquiescence to a claim of lawful authority no different than that involved in *Bumper* . . . . If the inspector makes such a claim, then, as properly concluded in *Biswell*, [406 U.S. at 315,] "the legality of the search depends not on consent but on the authority of a valid statute."

5 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 10.2(b) at 47 (4th ed. 2004) (footnote omitted).

---

[8] Although the administrative search in *Browning* uncovered evidence that resulted in a criminal prosecution, the same principles apply here, as this case, too, involves a warrantless administrative inspection.

¶24 Here, DQAC and DOH point to nothing to demonstrate that Dr. Seymour did anything other than acquiesce to the investigator's claim of lawful authority. They argue only in passing that he could have refused to cooperate with the investigator's requests, as did the psychologist under investigation in *Yoshinaka*. To the contrary, however, Dr. Seymour had a statutory obligation to comply with the investigation. *See* RCW 18.130.180(8) (making failure to comply with an investigative request unprofessional conduct). His failure to comply with the investigator's demands could have, itself, subjected him to professional discipline. His actions were not voluntary. DQAC and DOH have not carried their burden of proving otherwise.

¶25 In summary, the DOH investigator was a government agent. The investigator launched the investigation of Dr. Seymour without a determination of merit by DQAC, as required by the UDA. Thus, the warrantless inspection of Dr. Seymour's office was not made pursuant to a statutory scheme authorizing warrantless administrative searches. Accordingly, the inspection violated the Fourth Amendment's prohibition against unreasonable searches. The inspection was a search; the demands for records were seizures. All were made in violation of the Fourth Amendment.[9]

## IV

¶26 Turning to the appropriate remedy, we observe that the APA provides that the presiding officer of an adjudicatory hearing "shall exclude evidence that is excludable on constitutional or statutory grounds." RCW 34.05-.452(1). Dr. Seymour moved for relief, claiming that the search of his office and the seizures of his records were

---

[9] Because we view the Fourth Amendment and article I, section 7 as being coextensive in this circumstance, *see supra* note 4, we also hold that the warrantless search violated the state constitution.

done in an unconstitutional manner.[10] At the very least, the presiding officer should have excluded all evidence gathered pursuant to the warrantless July 2002 inspection of Dr. Seymour's office, including copies of patient records that were seized during the inspection, as well as the investigator's recollections of what she observed during the inspection. The presiding officer also should have excluded any copies of patient records that Dr. Seymour subsequently produced in response to any request that the investigator made during this inspection or at any time prior to April 2003, as any such request was made contrary to law.

## V

¶27 In light of our holding that at least some evidence should have been excluded, we must consider whether there remains substantial evidence in support of the commission panel's factual findings. RCW 34.05-.570(3)(e). We may reverse an administrative order if it is unsupported by substantial evidence or is arbitrary or capricious. RCW 34.05.570(3)(e), (h); *Ames v. Dep't of Health, Med. Quality Assurance Comm'n*, 166 Wn.2d 255, 260, 208 P.3d 549 (2009). Allegations of professional misconduct in a professional license disciplinary proceeding must be proved by clear and convincing evidence. *Ongom v. Dep't of Health*, 159 Wn.2d 132, 137-38, 148 P.3d 1029 (2006) (citing *Bang D. Nguyen v. Dep't of Health*, 144 Wn.2d 516, 518, 29 P.3d 689 (2001)). Further, an action is arbitrary and capricious if it is made without consideration of and in disregard of the facts and circumstances. *Johnson v. Dep't of Health*, 133 Wn. App. 403, 414, 136 P.3d 760 (2006).

¶28 Without relying on the evidence obtained pursuant to the warrantless search and seizures, it is impossible to say whether the commission's findings are supported by substantial evidence under the clear and convincing evidentiary standard. Although it appears from the record

---

[10] Dr. Seymour requested either that the charges against him be dismissed or that evidence be excluded. Exclusion, not dismissal, is the appropriate remedy.

that not all evidence introduced at the hearing was unconstitutionally derived, we are not in a position to determine which evidence was so derived and then to sift through the remaining evidence, if any, to determine if the panel's findings are substantially supported. Importantly, the parties have not had the opportunity to litigate the question of exactly which evidence must be excluded in light of our holding. Similarly, we cannot determine the validity of the sanctions imposed against Dr. Seymour, as they are the products of the evidence introduced at the hearing. Accordingly, further proceedings before the presiding officer and commission consistent with this opinion are required.[11]

## VI

¶29 The order of the commission is vacated. This case is remanded to the commission for further proceedings.

SCHINDLER, C.J., and APPELWICK, J., concur.

Reconsideration denied October 12, 2009.

---

[11] Dr. Seymour's contention on appeal that he was denied due process by the investigator's precipitous commencement of the investigation, or otherwise, is entirely without merit.